**ORLOFF v. WILLOUGHBY,
Colonel, U. S. Army.**

No. 13248.

United States Court of Appeals
Ninth Circuit.

March 13, 1952.

Rehearing Denied April 17, 1952.

Goodman, District Judge, dissented from order denying petition for rehearing.

John Caughlan, Siegfried Hesse, Seattle, Wash., for appellant.

J. Charles Dennis, U. S. Atty., John E. Belcher, Asst. U. S. Atty. Seattle, Wash. (Robert O. Hillis, Major Jagc, U. S. Army, Seattle, Wash., of counsel), for appellee.

Before ORR and POPE, Circuit Judges, and GOODMAN, District Judge.

ORR, Circuit Judge.

Appellant petitioned for a writ of habeas corpus. The petition was denied. He appeals. Appellant is a medical doctor, specializing in psychiatry. On July 26, 1951 he was inducted into the armed forces as a private by authority of the so-called "Doctors Draft Law," Public Law 779, 81st Cong., 2d Sess., 1950 U.S.Code Congressional Service, p. 885. The statute grants the President of the United States authority to " * * * require special registration of and, on the basis of requisitions submitted by the Department of De-

fense and approved by him, to make special calls for male persons qualified in needed—(A) medical and allied specialist categories who have not yet reached the age of fifty at the time of registration * * *. Persons called hereunder shall be liable for induction for not to exceed twenty-one [now 24] months of service in the Armed Forces." 50 U.S.C.A.Appendix, § 454(i). Public Law 779, 81st Cong., 2d Sess. § 1. Thus, while under the terms of the general draft law, Selective Service Act of 1948, persons over the age of 26 are not eligible for induction, 50 U.S.C.A.Appendix, § 454(a), as amended by Public Law 779, doctors, dentists and allied specialists, in contrast with the general population, may be inducted up to the age of 50. Appellant was over the age of 26 at the time of his induction. Prior to the date of his induction, upon advice of the Selective Service System, and to avoid being inducted under the Act,[1] appellant applied for and was granted a commission as a captain in the Medical Corps, United States Air Force. However, his commission was revoked on July 24, 1951, two days before the date of his scheduled induction, because of his failure to execute certain Air Force forms dealing with his commission application. Appellant is presently a private in the Army of the United States, assigned to and a member of Enlisted Replacement Center, Fort Lawton, Washington, for shipment to the Far Eastern Command. Since his induction the Army has given appellant a potential military occupational specialty (PMOS) of medical laboratory technician. Appellant has repeatedly requested the Army to assign him work as a medical doctor regardless of grade or rank, but has been informed that Army regulations permit only commissioned officers to practice as doctors. On December 10, 1951 appellant reapplied for a commission and his application is now pending. Upon being informed that it would take from six months to a year before his application was finally passed upon, and the Army being unable, because of his non-commissioned status, to use him as a doctor in the interim, appellant brought his petition.[2] His initial attempt to secure release from the Army was in the District Court for the District of Columbia. The petition was there dismissed for lack of jurisdiction. Orloff v. Lovett, D.C.D.C.1951, 101 F.Supp. 750. Upon arrival at Fort Lawton the present proceeding was instituted and the District Court ruled on the merits adversely to appellant.

■■ The fundamental question before us is one of statutory construction. Appellant urges that a doctor inducted under the Act must be used as a doctor in the armed services, that such requirement is mandatory under the Act, and that since his induction was for the one purpose only, if the Army cannot or will not give him such work, he must be discharged. His interpretation is based on the premise that the purpose of the Act was to enable the armed services to secure needed medical, dental and allied specialists without unnecessarily depleting the short supply of such civilian persons, and that consequently to draft a doctor and use him in another capacity is directly opposed to congressional intent because (1) the civilian supply is depleted, and, (2) the military demand remains unsatisfied. To give to the statute any other construction, argues appellant, would render it unconstitutional. That the primary purpose of drafting doctors, not otherwise subject to induction, was to supply the armed forces with needed specialists in this category, is apparent. Certainly, that was

1. The Act, § 1, exempts members of the Reserves from induction.

2. There is nothing in the record to indicate that appellant's present application for a commission will be looked upon by the Armed Forces more favorably than his first such application. The Army may take a year to finally act on the application and, if so, appellant will have served almost three-fourths of his induction term before being accepted or again rejected for a commission. In the interim, according to appellant's claims, he will be forced to serve in a capacity violating the statutory command, or in pursuance of an invalid statute. Under these special circumstances we do not think that this action is prematurely brought insofar as it may be argued that appellant should await action on his application for commission.

the ground on which the bill was justified to Congress by the military. And it also seems apparent that Congress contemplated that inductees under the Act would normally be utilized in their professional capacities. A reading of the debates in Congress is replete with references to such a congressional understanding and desire. See, 96 Cong. Rec. 13857, 13859. On the other hand, we have for decision the question of whether Congress enacted its understanding and desire into positive law and made such particular use of professional inductees mandatory upon the military.

The case was argued and briefed before us by appellee on the broad theory that, under the statute, doctors could be drafted and used for any purpose the Army saw fit; that the matter of duty assignment for such inductees was simply a matter of military discretion. In response, appellant urges that such a construction renders the Act subject to constitutional attack as unreasonable and discriminatory class legislation. We find it unnecessary to decide the constitutional question. The appellant is not being utilized in a capacity wholly outside the medical field. While it is true that under Army regulations he cannot practice medicine as such, he is nevertheless being employed in a type of work for which his medical training renders him peculiarly adaptable. There are many specialized duty assignments within the Armed Forces which require the performance of tasks well within the competence of doctors due to their extensive medical training. Such assignments may well be criticized as wasteful because not utilizing the inductee's capacities to the full level of his ability, but they are nevertheless within the area of his special competence. We think that a construction that the military may make such duty assignments is as far as we need go in this case. Such a construction, because of the clear relationship between the special class of inductees and the work they may be required to perform, removes the constitutional question from the case.

■ The words of the statute, in terms, do not require appellant's construction that a particular type of work alone can be assigned to inductees. Nor do they, in terms, require that a commission be granted inductees. On the contrary, it may well be urged that the words used will not bear the meaning which appellant seeks to impress upon them. The Act is written in the form of an amendment to the Selective Service Act of 1948, and seems merely, by acting within the framework of the general law, to describe additional classes of men eligible for induction under the latter statute. There is nothing to indicate that men inducted under this new section of the draft law are to be treated, after entrance into the armed forces, differently from men inducted under other provisions. It is significant that when Congress intended a class of registrants to be used in a particular manner, as in the case of conscientious objectors, it designated the type of work to which such persons should be assigned in the Armed Forces. See 50 U.S.C.A. Appendix, § 456(j). We do not think that the words of the statute preclude the Army's present utilization of appellant.

The legislative history of the Act bears out this construction. Congress was deeply concerned over the use that would be made by the Armed Forces of inductees, and that the military should not waste their talents. Justification for the bill as written, and the allaying of congressional fears was accomplished by assurances from the military that men inducted under the Act would be used in their professional capacities. See Hearings before House Armed Services Committee on H.R. 9554, 81st Cong., 2d Sess. 7164, 7174, 7176. These assurances were in turn used as arguments for passage of the bill during the debates. 96 Cong.Rec. 13857. The necessity for such reassurances implies a congressional recognition that, as written, the bill simply described a new class of persons eligible for induction, and did not make mandatory, use of the inductees strictly in their professional capacities. We think Congress passed the bill in the form it did relying upon the good faith of the military's representations that professional talents of the inductees would be effectively utilized. Appellant having been given a duty assignment within what we find to be the minimal permissible area, we are without power to control the exercise of military discretion.

Problems of a nature similar to that presented by this case were discussed before Congress. Representatives of the American Medical Association and American Dental Association were concerned that men might be inducted under the Act before their applications for commissions were acted upon. Accordingly, they proposed that the bill provide for deferment of induction of men who had pending applications and, in addition, that a provision be placed in the law prohibiting induction of men who had been refused commissions by the Armed Forces. See Hearings before Subcommittee of Senate Armed Services Committee on S. 4029, 81st Cong., 2d Sess. 11, 19, 21. The representatives of the American Dental Association criticized the Senate Bill (which for our purposes may be treated as the bill that was actually passed) by saying that it did not " * * * provide a mechanism for commissioning at least the medical and dental personnel who might be inducted * * * although if such personnel are [not] commissioned it would be difficult to utilize their professional services to the maximum extent under the existing corps system." Id. at 21, and see House Hearings, supra, 7199. At another point the American Dental Association representative asserted: "It is the conviction of the American Dental Association that professionally trained men should be used in their professional capacities. If it is not possible for the Armed Forces so to utilize such personnel, then, * * * it is better that the professional skill of such person be made available to the civilian population." Id. at 24. A bill was introduced in the House and died in committee which prohibited induction of registrants until they had been tendered a commission. See Hearings before House Committee on Armed Services, supra, 7206. It was recognized that a man could not be inducted into a commissioned status but would have to be drafted as a private. General Robinson, Surgeon General of the Army, testified before the House Committee that upon being drafted it would be Army policy to tender a commission to the inductee, but that it could be done only if he would accept it. Representative Kilday asked: "If he would not accept it he would remain on as an enlisted man?" General Robinson replied: "That is correct." Hearings before House Committee on Armed Services, supra, 7164. Congress then was not unaware of the problems that might arise in the case of men inducted, necessarily as privates, under the Act. Yet, as eventually adopted, the bill bears silent witness to the rejection of legislative proposals specifically designed to deal with such situations. It seems apparent, however, that the induction of a doctor without the tendering of a commission is and will continue to be a very exceptional case indeed. The Medical Corps of the Air Force in this case went out of its way to have appellant commissioned before induction, by postponing certain requirements in order to accomplish this. It was appellant's refusal to comply with regulations that resulted in his commission being revoked. Appellant cannot be said to be without fault in causing the situation in which he now finds himself. Nor is the Army to be censured in this particular case. It found itself with an inductee sent by the Selective Service Board, which it could not, because of regulations, use as a doctor in a full sense. We have not been advised as to how the Army could legally discharge the inductee under such circumstances. It has him on its hands and is using him in a capacity employing some of his skills. We see no more it could do.

The judgment is affirmed.

GOODMAN, District Judge (concurring).

I concur in the result, because I believe that the "Doctors Draft Law" was administered fairly by the Military and in accordance with Congressional intent, as to appellant. He was commissioned. The commission was revoked because of *his* refusal to comply with regulations. This fully justified the denial of the writ by the Court below.

I do not agree with the court's view that the statute permits the military to make any duty assignment to a drafted doctor within a "minimal permissible area." It seems to me that this holding is not necessary for decision in this case. Since it

has been made the basis of decision, I cannot agree to it.

In my opinion, Congress did not leave to the military the power to fix the duties of a drafted doctor within some general undefined limits. For if that be so, then a drafted doctor, for example, could be put to work by the military, cleaning sponges or instruments in an operating room, upon the theory that such work has a reasonable relationship, within a "permissible area," to medical services.

In my opinion, Congress intended that a drafted doctor should be a doctor in the military service, unless his own refusal prevents. Otherwise he should be discharged and returned to civilian medical status.

On Petition for Rehearing.

The petition for rehearing is denied.

GOODMAN, District Judge (dissenting).

I concurred in the court's decision affirming the order denying the writ below, because, in my opinion, appellant's own fault deprived him of his officer's commission. However, I specifically abstained from concurring in the basis of decision reached by the majority of the court.

Now, I am persuaded by the petition for rehearing, that, irrespective of the action of appellant which brought about the loss of his commission prior to his induction, due process under the "Doctors Draft Law" requires the Army to use appellant as a doctor or return him to civilian life.

Consequently I dissent from the order denying appellant's petition for rehearing.