## ORLOFF *v.* WILLOUGHBY, COMMANDANT.

No. 444.  Argued January 13, 1953.—Decided March 9, 1953.

*David Rein* and *Stanley Faulkner* argued the cause and filed a brief for petitioner.

*Robert S. Erdahl* argued the cause for respondent. With him on the brief were *Solicitor General Cummings, Assistant Attorney General Murray, Beatrice Rosenberg* and *Murry Lee Randall.*

MR. JUSTICE JACKSON delivered the opinion of the Court.

Petitioner presents a novel case. Admitting that he was lawfully inducted into the Army, he asks the courts, by habeas corpus, to discharge him because he has not been assigned to the specialized duties nor given the commissioned rank to which he claims to be entitled by the circumstances of his induction. The petitioner had passed the ages liable to induction except under the Universal Military Training and Service Act, 50 U. S. C. App. § 454 (i)(1)(A), which authorizes conscription of certain "medical and allied specialist categories." The statute sets up a priority system for calling such specialists, the first liable being those who received professional training at government expense during World War II and who have served less than ninety days since completion of such training. As a doctor who had received training under this program, Orloff was subject to this provision and was called up pursuant to it.

His petition alleged that he was illegally restrained of his liberty because he was liable for service only as a doctor but, after induction, had been given neither rank nor duties appropriate to that profession and so was entitled to be discharged. He alleged that under Army regulations and practice one can serve as a doctor only as a commissioned officer and that he applied for but had not received such an appointment. He also alleged that he had requested assignment of physician's duties, with or without a commission, but that this also had been denied him.

The return to the order to show cause asserted that Orloff was lawfully inducted and therefore the court is without jurisdiction of the subject matter. An affidavit by Colonel Willoughby set forth that the petitioner, after sixteen weeks of Army medical service training following his induction, was awarded a "potential military occupation specialty" as a medical laboratory technician. Appointment as an officer in the Army Medical Corps Reserve, he said, was still under consideration. It also asserted that under his induction he was liable for training and service under military jurisdiction and was subject to military orders and service the same as any other inducted person.

Answering the petition for habeas corpus, the respondent raised as affirmative defenses that petitioner was subject to military command and that both the subject matter and the person of the petitioner were under the exclusive jurisdiction of the President of the United States as Commander in Chief of the Armed Forces, and that petitioner had failed to exhaust his administrative remedies. Respondent further stated that his application for a commission still was being processed by military authorities "because of particular statements made by petitioner in his application concerning prior membership or association with certain organizations desig-

nated by the Attorney General of the United States on October 30, 1950 pursuant to Executive Order 9835," that the court was without jurisdiction, and that habeas corpus does not lie for the purpose of the case.

By way of traverse, Orloff set forth in detail his qualifications as a physician and psychiatrist and alleged that the medical laboratory technician status was not a doctor's work and required no more than a four-month training of a layman in the medical field service school. This, he claims, is not within the medical specialist category for which he was conscripted. He asserted that he was willing to serve as a medical specialist, that is, as a medical doctor, and had offered his services as a doctor in the grade or rank of private but had been advised that he could serve as a doctor only upon being commissioned.

Upon such pleadings the cause proceeded to hearing. Petitioner's counsel told the trial court that no question was involved as to the Army's granting or not granting a commission and that petitioner was not asking anybody to give anybody else a commission, but he claimed to be entitled to discharge until the Army was prepared to use his services as a doctor. It was admitted that petitioner had made no request of respondent for a discharge. Evidence was taken indicating that the specialty to which Orloff had been assigned was not that usual for a physician. The trial judge concluded that the law does not require a person drafted under the "medical and allied specialist categories" to be assigned doctor's functions and those only, and interpreted the law that a doctor inducted under the statute was in the same status, so far as his obedience to orders is concerned, as if he had been inducted under other conscription statutes and could not insist on being used in the medical category. He therefore denied the writ.

On appeal, as the Court of Appeals pointed out, the case was argued and briefed by the Government on the broad theory that under the statute doctors could be drafted and used for any purpose the Army saw fit, that duty assignment for such inductees was a matter of military discretion. The court agreed and on that ground affirmed.[1]

We granted certiorari,[2] and in this Court the parties changed positions as nimbly as if dancing a quadrille. The Government here admits that the petitioner is entitled to duties generally within a doctor's field and says that he now has been assigned to such. The petitioner denies that he yet has duties that fully satisfy that requirement. Notwithstanding his position before the trial court, he further says that anyway he must be commissioned and wants this Court to order him commissioned or discharged.

In its present posture, questions presented are, first, whether to accept the Government's concession that one inducted as a medical specialist must be used as such; second, whether petitioner, as matter of law, is entitled to a commission; third, whether the federal courts, by habeas corpus, have power to discharge a lawfully mustered member of the Armed Forces because of alleged discriminatory or illegal treatment in assignment of duties.

1. This Court, of course, is not bound to accept the Government's concession that the courts below erred on a question of law. They accepted the Government's argument as then made and, if they were right in doing so, we should affirm. We think, however, that the Government is well advised in confessing error and that candid reversal of its position is commendable. We

[1] 195 F. 2d 209.
[2] 344 U. S. 873.

understand that the Army accepts and is governing itself by the Government's present interpretation of its duty toward those conscripted because of professional skills. To separate particular professional groups from the generality of the citizenship and render them liable to military service only because of their expert callings and, after induction, to divert them from the class of work for which they were conscripted would raise questions not only of bad faith but of unlawful discrimination. We agree that the statute should be interpreted to obligate the Army to classify specially inducted professional personnel for duty within the categories which rendered them liable to induction. It is not conceded, however, that particular duty orders within the general field are subject to judicial review by habeas corpus.

2. We cannot comply with the appellant's insistence that we order him to be commissioned or discharged. We assume that he is correct in stating that it has been a uniform practice to commission Army doctors; indeed, until 1950 Congress provided that the Army Medical Corps should consist of ". . . commissioned officers below the grade of brigadier general." 10 U. S. C. A. § 91. But in 1950 Congress repealed § 91 and substituted in its place the following language: "[The Medical Corps] . . . shall consist of Regular Army officers appointed and commissioned therein and such other members of the Army as may be assigned thereto by the Secretary of the Army . . . ." 10 U. S. C. § 81–1. 10 U. S. C. § 94 provides that medical officers of the Army may be assigned by the Secretary of the Army to such duties as the interests of the service demand. Thus, neither in the language of the Universal Military Training and Service Act nor of the Army Reorganization Act referred to above is there any implication that all personnel inducted under the Doctor's Draft Act and as-

signed to the Medical Corps be either commissioned or discharged.

Petitioner, by his concessions on the hearing to the effect that the question of a commission was not involved, may have avoided a full litigation of the facts which lie back of his noncommissioned status, but enough appears to make plain that there was cause for refusing him a commission.

It appears that just before petitioner was inducted he applied for and was granted a commission as captain in the Medical Corps, United States Air Force Reserve. When he refused to execute the loyalty certificate prescribed for commissioned officers, his appointment was revoked and he was discharged. This petitioner refused information as to his membership in or association with organizations designated by the Attorney General as subversive or which advocated overthrow of the Government by force and violence. He gave as his reason that "as a matter of conscience, I object to filling out the loyalty certificate because it involves an inquisition into my personal beliefs and views. Moreover, the inquiry into organizational affiliations employs the principle of guilt by association, to which I am vigorously opposed. Further, it is my understanding that all the organizations were listed by the Attorney General without notice or hearing which has caused the Supreme Court to invalidate it."

After he was inducted, petitioner applied for another commission and filed the required loyalty certificate but again refused to supply the requested information. He stated, "I have attended public meetings of the Civil Rights Congress and the National Council of American-Soviet Friendship. In 1943, I co-authored a radio play for the latter organization. Over a period of $7\frac{1}{2}$ months I attended classes at the Jefferson School of Social Sciences (ending in the Spring of 1950). With respect to any other organizations contained on the annexed list I am

compelled to claim my Federal Constitutional Privilege. However, I have never considered myself an organizational member of any of the aforesaid." As to the question "Are you now or have you ever been a member of the Communist Party, U. S. A. or any Communist Organization?" he said, "Federal constitutional privilege is claimed."

The petitioner appears to be under the misconception that a commission is not only a matter of right, but is to be had upon his own terms.

The President commissions all Army officers. 5 U. S. C. § 11. We have held that, except one hold his appointment by virtue of a commission from the President, he is not an officer of the Army. *United States* v. *Mouat*, 124 U. S. 303. Congress has authorized the President alone to appoint Army officers in grades up to and including that of colonel, above which the advice and consent of the Senate is required. 55 Stat. 728, as amended, 57 Stat. 380.

It is obvious that the commissioning of officers in the Army is a matter of discretion within the province of the President as Commander in Chief. Whatever control courts have exerted over tenure or compensation under an appointment, they have never assumed by any process to control the appointing power either in civilian or military positions.

Petitioner, like every conscript, was inducted as a private. To obtain a change of that status requires appointment by or under authority of the President. It is true that the appointment he seeks is one that long and consistent practice seems never to have denied to one serving as an Army doctor; one, too, that Congress in authorizing the draft of doctors probably contemplated normally would be forthcoming. But, if he is the first to be denied a commission, it may also be that he is the first doctor to haggle about questions con-

cerning his loyalty. It does not appear to us that it is the President who breaks faith with Congress and the doctors of America. We are not easily convinced that the whole military establishment is out of step except Orloff.

The President's commission to Army officers recites that "reposing special trust and confidence in the patriotism, valor, fidelity and abilities" of the appointee he is named to the specified rank during the pleasure of the President. Could this Court, whatever power it might have in the matter, rationally hold that the President must, or even ought to, issue the certificate to one who will not answer whether he is a member of the Communist Party?

It is argued that Orloff is being punished for having claimed a privilege which the Constitution guarantees. No one, at least no one on this Court which has repeatedly sustained assertion by Communists of the privilege against self-incrimination, questions or doubts Orloff's right to withhold facts about himself on this ground. No one believes he can be punished for doing so. But the question is whether he can at the same time take the position that to tell the truth about himself might incriminate him and that even so the President must appoint him to a post of honor and trust. We have no hesitation in answering that question "No."

It is not our view of Orloff's fitness that governs. Regardless of what we individually may think of the usefulness of loyalty oaths or the validity of the Attorney General's list of subversive organizations, we cannot doubt that the President of the United States, before certifying his confidence in an officer and appointing him to a commissioned rank, has the right to learn whatever facts the President thinks may affect his fitness. Perhaps we would not ask some of these questions, or we might ask others, but if there had never been an

Attorney General's list the President would be within his rights in asking any questions he saw fit about the habits, associations and attitudes of the applicant for his trust and honor. Whether Orloff deserves appointment is not for judges to say and it would be idle, or worse, to remand this case to the lower courts on any question concerning his claim to a commission.

3. This leaves the question as to whether one lawfully inducted may have habeas corpus to obtain a judicial review of his assignments to duty. The Government has conceded that it was the legal duty of the Army to assign Orloff to duties falling within "medical and allied specialist categories." However, within the area covered by this concession there are many varieties of particular duties. The classification to which petitioner belonged for inductive purposes was defined by statute to be "medical and allied specialist categories." This class includes not merely doctors and psychiatrists but other medical technicians, and, while the duties must be within this category, a large area of discretion as to particular duties must be left to commanding officers. The petitioner obtained basic medical education at the expense of the Government. In private life he has pursued a specialty. But the very essence of compulsory service is the subordination of the desires and interests of the individual to the needs of the service. A conscripted doctor may have pursued the specialty of obstetrics, but in the Army, which might have limited use for his specialty, could he refuse other service within the general medical category?

Each doctor in the Army cannot be entitled to choose his own duties, and the Government concession does not extend to an admission that duties cannot be prescribed by the military authorities or that they are subject to review and determination by the judiciary.

The nature of this issue is pointed up by the controversy that survives the changes the parties have made in their positions in this Court. It is admitted that Orloff is now assigned to medical duties in the treatment of patients within the psychiatric field. He is not allowed functions that pertain to commissioned officers, but, apart from that, he is restricted from administering certain drugs and treatments said to induce or facilitate a state of hypnotism. Orloff claims this as his professional prerogative, because in private practice he would be free to administer such treatments. The Government says, however, that because of doubts about his loyalty he is not allowed to administer such drugs since his patients may be officers in possession of important military information which he could draw out from them while they were under the influence of the drugs. Of course, if it were the function or duty of the judiciary to resolve such a controversy, this case should be returned to the District Court to take evidence as to all issues involved.

However, we are convinced that it is not within the power of this Court by habeas corpus to determine whether specific assignments to duty fall within the basic classification of petitioner. It is surely not necessary that one physician be permitted to cover the whole field within the medical classification, nor would we expect that a physician is exempt from occasional or incidental duties not strictly medical. In these there must be a wide latitude allowed to those in command.

We know that from top to bottom of the Army the complaint is often made, and sometimes with justification, that there is discrimination, favoritism or other objectionable handling of men. But judges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can

be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters. While the courts have found occasion to determine whether one has been lawfully inducted and is therefore within the jurisdiction of the Army and subject to its orders, we have found no case where this Court has assumed to revise duty orders as to one lawfully in the service.

But the proceeding being in habeas corpus, petitioner urges that, if we may not order him commissioned or his duties redefined, we may hold that in default of granting his requests he may be discharged from the Army. Nothing appears to convince us that he is held in the Army unlawfully, and, that being the case, we cannot go into the discriminatory character of his orders. Discrimination is unavoidable in the Army. Some must be assigned to dangerous missions; others find soft spots. Courts are presumably under as great a duty to entertain the complaints of any of the thousands of soldiers as we are to entertain those of Orloff. The effect of entertaining a proceeding for judicial discharge from the Army is shown from this case. Orloff was ordered sent to the Far East Command, where the United States is now engaged in combat. By reason of these proceedings, he has remained in the United States and successfully avoided foreign service until his period of induction is almost past. Presumably, some doctor willing to tell whether he was a member of the Communist Party has been required to go to the Far East in his place. It is not difficult to see that the exercise of such jurisdic-

tion as is here urged would be a disruptive force as to affairs peculiarly within the jurisdiction of the military authorities.

We see nothing to be accomplished by returning this case for further litigation. The judgment is

*Affirmed.*

MR. JUSTICE BLACK, with whom MR. JUSTICE FRANKFURTER and MR. JUSTICE DOUGLAS concur, dissenting.

I agree with MR. JUSTICE FRANKFURTER's dissent.

The United States confesses error in this case and then tells us that since the District Court rendered its erroneous judgment Dr. Orloff has been assigned to some duties that fall within the range of medical activities. This is denied by Dr. Orloff. Apparently admitting that Orloff could not be retained in the Army to do something other than the performance of medical services, the Court nevertheless refuses to send the case back to have this factual controversy determined by the District Court. This Court is usually exceedingly reluctant to resolve disputed facts. I cannot understand why it feels called on to affirm this admittedly erroneous judgment by deciding disputed facts on mere unsworn statements of parties here. And there are other reasons why I think the case should be reversed.

I believe the United States was right when it stipulated in the District Court that it could not lawfully utilize Orloff's services as a physician without giving him a commission. It is true the United States has here backed away from this stipulation. It now claims a right to utilize Orloff as a doctor without granting him a commission and this Court agrees. I do not agree.

Since 1847, one hundred and six years ago, Army doctors have served only when they have been commissioned

to do so as officers.* This long-standing Army practice is in harmony with the law as it exists today. 10 U. S. C. (Supp. IV) § 81–1 and § 91a. The congressional hearings and discussions of the special draft act under which Dr. Orloff was inducted indicate that the law probably never would have been passed but for repeated assurances given the Congress that all doctors drafted and held for service under it would be granted commissions. This, because the law was admitted by its sponsors to be "discriminatory legislation," singling out the medical profession and its allies, and providing for their induction up to 50 years of age, although other people of this age group could not be called into Army service. This discrimination was justified to Congress only on the ground that doctors made to serve under that law would be given at least a first lieutenant's grade in accordance with the century-old practice of the Army. 96 Cong. Rec. 13861. I think the Government breaks faith with the Congress and with the doctors of America in drafting a doctor without granting him a commission.

It is difficult to think of any sound reason why the Army claims power to use this doctor while denying him the privileges of all other Army doctors. He will be the only doctor denied a commission out of 3,989 doctors drafted under the special law up to last October. And if there was any genuine question about his loyalty to our country, it seems unthinkable that any responsible person in the armed forces would be willing to let him have any part in the treatment of sick and wounded soldiers. If therefore Dr. Orloff is being used as a doctor, the Army must believe that he is dependable despite his failure to answer the question about his past asso-

---

*The Government admits that such has been the practice since the Act of February 11, 1847, 9 Stat. 123, 124–125.

ciations. If he is being used, the law entitles him to a commission.

This record indicates to me, however, that Dr. Orloff is being held in the Army not to be used as a medical practitioner, but to be treated as a kind of pariah in order to punish him for having claimed a privilege which the Constitution guarantees. Doubtless there are some who would make it a crime for a person to claim this privilege. If an attempt is to be made to punish draftees for asserting constitutional claims, as I can hardly believe it would, it should be done only by an act of Congress. Should such be attempted I would hope that this Court would promptly declare an act to that effect unconstitutional. And if some kind of punishment is to be imposed for asserting constitutional rights, it should not be imposed without a trial according to due process of law.

I think it only fair to state that I see nothing in this record from which the slightest inference should be drawn that Dr. Orloff has taken the course he did in order to avoid service in the Army here or abroad.

This whole episode appears to me to be one of a too-rapidly increasing number to which Americans in a calmer future are not likely to point with much pride.

Mr. Justice Frankfurter, whom Mr. Justice Black and Mr. Justice Douglas join, dissenting.

Of course the commissioning of officers in the Army lies entirely within the President's discretion and is not subject to judicial control. Although there can be no doubt about that, it does not follow that Congress is precluded from drafting a special group into the Army on condition that they will be commissioned. Receiving a commission is clearly not a matter of right; but granting it may be a condition for retaining a person in the Army. The commissioning of officers in the

Army is, no doubt, a matter of discretion within the province of the President as Commander in Chief. But whether we can or cannot hold the President's lawful exercise of his discretion to be a ground for discharge of one he fails to commission depends on the conditions under which Congress authorized him to be drafted.

And so for me the central question in this case is whether one who is drafted under the doctors draft statute, 64 Stat. 826, 50 U. S. C. App. (Supp. IV) § 454 (i) (1), but who does not, in due course, obtain a commission, of whatever rank, must, as a matter of statutory construction, be discharged from the Army because Congress imposed the condition of such a commission on drafting doctors above the general draft age and the condition has not been fulfilled. That view would be strongly supported by the admission of the Government in the trial court that the "regulations and practice of the United States Army provide that an individual can serve as a doctor of medicine in the United States Army only if he holds a rank as a commissioned officer."* Further, if the statements that were made at the hearings and on the floor of the Congress by those who were in charge of the legislation had been made in a formal committee report, this Court could hardly have held that the receipt of a commission was not a condition on keeping in the Army a doctor drafted under these special provisions. Whatever we may think about the loose use of legislative history, it has never been questioned that reports of committees and utterances of those in charge of legislation constitute authoritative exposition of the meaning of legislation. It is hard to believe that the powerful American Medical Association would have failed to oppose

---

*Compare Petition for Writ of Habeas Corpus, par. 7, R. 2, with Answer to Petition for Writ of Habeas Corpus, par. VII, R. 8–9; see R. 23–24.

vigorously any provisions under which the Army could draft doctors not otherwise draftable as noncommissioned personnel or that the Congress would have adopted any such provision in the face of professional opposition.

An independent investigation of all the relevant factors bearing on the legislation, beyond what was brought to our attention, see Hearings before House Committee on Armed Services on H. R. 9554, 81st Cong., 2d Sess. 7164, 7166–7167, 7189, 7223; 96 Cong. Rec. 13861, would be necessary to enable one to be confident in rejecting the contention that doctors who were drafted were to obtain a commission. I do not mean to say that mandamus would lie to compel the grant of a commission. That is not the only alternative. The obvious *tertium quid* is the release of a doctor-draftee who is found unfit for a commission. On the basis of what has been put before us I do not see how we can dispose of the case with complete indifference to this crucial issue. This seems to me the more inadmissible in view of the shifting arguments of the Government, as it has been driven from position to position. Only in its purpose to keep this man in the Army has the Government been undeviating. He could not be drafted under the general draft law; and if a pledge was given to the medical profession, as apparently it was, that a special class of drafted doctors would be duly commissioned, Orloff ought not to be retained in disregard of that pledge. In that case, it is immaterial what quirky notions petitioner may have as to the reasons why a commission has been withheld from him.