Edward W. DePINO, Plaintiff,

v.

COMMANDING OFFICER, U. S. A. OVERSEAS REPLACEMENT STATION, FORT LEWIS, WASHINGTON, Commanding Officer, Co. C 1stBn 41st Inf., Fort Hood, Texas, John F. Forrest, Colonel, G.S. Chief of Staff, Headquarters, 2nd Armored Division, Fort Hood, Texas, Defendants.

Civ. No. 14047.

United States District Court,
D. Connecticut.

Feb. 5, 1971.

Alan E. Silver, New Haven, Conn., for plaintiff.

Stewart Jones, U. S. Atty., Thomas F. Maxwell, Asst. U. S. Atty., New Haven, Conn., for defendants.

## MEMORANDUM OF DECISION

ZAMPANO, District Judge.

The plaintiff, Edward W. DePino, a sergeant in the United States Army, seeks mandamus and injunctive relief against his military orders to report to Fort Lewis, Washington, for assignment to Vietnam. A temporary restraining order was issued and a series of hearings was held. The hearings were recessed by agreement of the parties to enable the plaintiff to seek redress through the Inspector General's office at Fort Dix. The Inspector General rejected the plaintiff's claims and the hearings before this Court were resumed and concluded.

On March 19, 1968, DePino, a resident of West Haven, Connecticut, enlisted in the United States Army for a period of three years. He completed his basic training at Fort Dix, and took advanced infantry training at Fort Polk, Louisiana. In August, 1968, he was sent to Vietnam as a light weapons infantryman with a MOS (Military Operational Specialty) rating of 11–B–4, and soon thereafter was promoted to sergeant. He received numerous decorations for his service in Vietnam, some of which were for heroism in battle.

After being wounded in combat, De-Pinto was returned to the United States on July 12, 1969, and assigned to Fort Hood, Texas. On July 31, 1970, he received Special Order 212, instructing him to proceed to Fort Lewis on September 6, 1970, for deployment to Vietnam. According to DePino, he immediately complained to his superior officers, but was informed that nothing could be done to relieve him of the order to return to Vietnam. He did not report to Fort Lewis but instead came home to West Haven and retained counsel to represent him. While in AWOL status, DePino instituted the present action.

DePino contends that the Army is violating its own regulations in reassigning him to Vietnam, cf. Smith v. Resor, 406 F.2d 141 (2 Cir. 1969); Hammond v. Lenfest, 398 F.2d 705 (2 Cir. 1968); that certain applicable Army directives are being applied in an arbitrary and capricious manner in his case; and that, in any event, this Court should exercise its equitable powers in the interests of fairness and justice to restrain the Army from sending him to Vietnam for another tour of duty. The defendants, on the other hand, challenge the jurisdiction of this Court to entertain DePino's grievances, deny that the Army failed to follow its regulations, and affirmatively claim DePino's assignment to Vietnam was fair and reasonable under the circumstances prevailing in Vietnam in August, 1970.

There is little question that DePino has presented an appealing case and one in which equitable principles weigh heavily in his favor. He is a conscientious soldier who served a long tour of duty in Vietnam, received numerous honors for combat service, and was wounded. He feels strongly, and understandably so, that before he is required to face enemy gunfire again, other soldiers, who are "Stateside" and who have not yet been sent into combat, should be placed ahead of him in the order of call to Vietnam. If this Court had jurisdiction or was empowered to review the judgment of the military authorities in this case, it might well overrule the decision finding DePino eligible for duty in Vietnam.

However, the law seems clear that the Court lacks the power to review the judgment of the military authorities. In Orloff v. Willoughby, 345 U.S. 83 at pp. 93–94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953), the Supreme Court stated:

However, we are convinced that it is not within the power of this Court by habeas corpus to determine whether specific assignments to duty fall within the basic classification of petitioner.

\* \* \* \* \* \*

We know that from top to bottom of the Army the complaint is often made, and sometimes with justification, that there is discrimination, favoritism or other objectionable handling of men. But judges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters. While the courts have found occasion to determine whether one has been lawfully inducted and is therefore within the

jurisdiction of the Army and subject to its orders, we have found no case where this Court has assumed to revise duty orders as to one lawfully in the service.

See also Craycroft v. Ferrall, 408 F.2d 587, 595 (9 Cir. 1969), vacated 397 U.S. 335, 90 S.Ct. 1152, 25 L.Ed.2d 351 (1970); Noyd v. McNamara, 378 F.2d 538 (10 Cir. 1967); Weber v. Clifford, 289 F.Supp. 960 (D.Md.1968); Rank v. Gleszer, 288 F.Supp. 174, 175 (D.Colo. 1968).

■ Also it is clear that this Court does not have personal jurisdiction. None of the named defendants can be found within the District of Connecticut and the plaintiff has not been stationed within the District but is presently absent without leave. Thus, even if the Court had jurisdiction over the subject matter of this action, it lacks the power to grant the plaintiff the relief he seeks. United States ex rel. Rudick v. Laird, 412 F.2d 16, 21 (2 Cir.), cert. denied, 396 U.S. 918, 90 S.Ct. 244, 24 L.Ed.2d 197 (1969).

Moreover, the plaintiff has failed to carry his burden of proof on the claim that the Army failed to comply with applicable regulations governing the assignment of personnel to Vietnam. Lt. Colonel Ronald W. Dubois testified that his office assigns all enlisted men in grades E-1 through E-6 to their prospective duty stations, including those of the overseas commands. Each month the overseas commands request a number of enlisted men of particular ranks and specialties. These requests are called requirements. Dubois' office then assigns individuals by name to fill these requirements. Individuals are chosen for the Vietnam requirement according to an established order of priority, the first being those who have volunteered for Vietnam. The next category of individuals assigned to fill the Vietnam requirement contains those who had no previous overseas tour and who have no restrictions which would prevent their assignment to Vietnam. The next category assigned involves those whose previous overseas assignment was a long tour, such as Germany, and those individuals who have been back in the United States the longest are assigned to Vietnam first. The next category contains those who had a previous short tour, such as Korea, but who have not served in Vietnam. All unrestricted individuals who had not served a tour of duty in Vietnam will be assigned before an individual will be involuntarily returned to Vietnam. If it is necessary to return an enlisted man to Vietnam, those individuals who have been back from Vietnam the longest are returned first. Dubois stated that no one is returned to Vietnam who has not been back in the United States at least 12 months.

Dubois further testified that he personally reviewed the selection of the plaintiff for assignment to Vietnam. He testified that during the months of May through October, 1970, a monthly average of 462 men were involuntarily assigned to a second tour in Vietnam and included on the same assignment as that of the plaintiff were 12 individuals of the grade E-5 and MOS 11-B-4 who had a previous tour in Vietnam. Dubois' investigation of the selection of the plaintiff revealed that no regulations were violated.

■ The plaintiff levels no legal attack on the merits of the selection process itself, nor does he contend that the Army failed to comply with the selection procedures as outlined by Dubois when his name was drawn for service in Vietnam. He does argue, however, that two Army regulations were violated when he was deemed eligible for such service. The first is Regulation AR 614-30 Par. 8-3 which states that enlisted men are ineligible for overseas duty unless they have six months or more service remaining as of the scheduled date of arrival at an overseas replacement station or port of embarkation. It seems clear this Regulation was not violated because DePino's reporting date at Fort Hood (September 6, 1970) was more than six

months from the date his enlistment time terminated (March 18, 1971).

The second Regulation at issue is AR 614–215 Par. 2–2b(1) (a) which provides that enlisted personnel who have previously served in Vietnam and who had been credited with completion of a normal tour will not again be involuntarily assigned to Vietnam with express reaffirmation or waiver by the Department of the Army. It is undisputed that the plaintiff's SEPOS (Selected Enlisted Personnel for Overseas Services) contains the proper reaffirmation or waiver of his selection by the Army. The plaintiff, however, interprets the Regulation to mean that *he* must also affirm his willingness to serve in Vietnam again. Obviously, his reading of the Regulation is contrary to the express language contained therein, and must be rejected.

Accordingly, the plaintiff's motion for mandamus and injunctive relief is denied; the complaint is dismissed.