**UNITED STATES ex rel. Frederick Paul HENKELS, Jr.**

v.

**Col. James POWERS, Commander, et al.**

**Civ. A. No. 71–1479.**

United States District Court, E. D. Pennsylvania.

June 25, 1971.

A. Clifford Pearlman, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for petitioner.

Louis C. Bechtle, U. S. Atty., Richard Galli, Asst. U. S. Atty., Philadelphia, Pa., for respondents.

## MEMORANDUM OPINION AND ORDER

EDWARD R. BECKER, District Judge.

### I. STATEMENT OF FACTS

Relator, a student at Drexel University and a member of the United States Army by virtue of his participation in advanced R.O.T.C.,[1] has petitioned this Court for a preliminary injunction restraining the Army from: (1) ordering him to six-week officers' summer camp at Indiantown Gap, Pennsylvania,[2] pending the Army's disposition of his request for discharge as a conscientious objector; and (2) disciplining the relator for failure to attend R.O.T.C. summer camp. Relator has also filed with the Court a petition for a writ of habeas corpus seeking a conscientious objector discharge from the Army.

. A preliminary injunction hearing was held on June 23, 1971, at which time counsel for relator and counsel for the government stipulated to the following relevant facts:

On April 12, 1971, relator filed an application for discharge with the Commander of the R.O.T.C. detachment at Drexel University. On April 23rd, pursuant to Army regulations, relator was interviewed by an Army psychiatrist and an Army chaplain. On April 29th, the so-called O-3 interview (the final step in the interview process) was conducted by a Captain Bartholemew to determine the merits of relator's claim. Captain Bartholemew was subsequently transferred to Ft. Benjamin Harrison, Indiana, and through oversight, his report was not completed until May 24th.

This report was forwarded the following day to the next step in the chain-of-command, the United States First Army at Ft. George Meade, Maryland. On June 18th, relator's application was returned to his R.O.T.C. detachment because of relator's failure to sign the application in the appropriate places.[3] Relator thereupon signed his application and it was again forwarded to the First Army on June 22, 1971.

On May 1, 1971, in the interim in which relator's application was being processed, relator received orders to report for summer camp on June 12th. These orders were subsequently rescinded, and new orders were issued on June 3rd ordering relator to report on June 26, 1971.

Relator represented to the Court that an application for discharge as a conscientious objector, filed in accordance with A.R. 135-25, normally is processed, and a decision rendered, within sixty days from the date of filing. The government, however, disputes this point and cites language contained in A.R. 135-25, which states:

"Normally a *minimum* period of ninety days is required to finalize the processing of an application submitted in accordance with this regulation." (emphasis added)

Relator concedes that he is on notice of this regulation. Relator's application is presently at the First Army. From there, the application must be forwarded to the Commander of the United States Army Reserve Components, Lieutenant Colonel H. W. Wheeler, at Ft. Benjamin Harrison, Indiana, who in turn convenes a board of review for a final disposition

---

1. Upon enlistment in advanced R.O.T.C., relator took the oath of induction into the Armed Forces, and he is therefore under the Army's jurisdiction.

2. Indiantown Gap is located in Lebanon County, Pa., within the confines of the Middle District of Pennsylvania.

3. Relator asserts that the applicable Army regulation, A.R. 135-25, does not require the application form to be signed separately at the end by the applicant, and that the application was checked by Captain McDonald, assigned to relator's R.O.T.C. detachment, who found it to be in proper form before forwarding it to First Army. In view of our disposition, we find it unnecessary to determine this question.

of relator's claim. It is clear that the final determination cannot be made by June 26th, the day on which relator is due to report to summer camp.[4]

## II. DISCUSSION

### A. The Question of Exhaustion.

■ Relator concedes that he has not exhausted his administrative remedies prior to asking this Court for relief. His prayer for a preliminary injunction is bottomed principally upon the theory that exhaustion is not necessary because of the inordinate delay in processing his application.

Relator relies upon the case of Halpin v. Mier, Civ.No. 70–2435 (E.D.Pa., May 3, 1971), for the proposition that unjustified delays in processing an application for discharge permit the courts to consider the administrative remedies exhausted and to enjoin the Army from activating a serviceman. In *Halpin*, Judge A. Leon Higginbotham, Jr. enjoined the Army from activating a reservist for failure to attend meetings, when the evidence showed that the reservist had filed an application for discharge sixteen months previously which the Army had not acted upon. While we agree with the principles enunciated in *Halpin*, we find the facts of the instant case readily distinguishable. In *Halpin*, there was a *sixteen*-month delay. Here the application was filed only two and a half months ago; yet, A.R. 135–25 prescribes a ninety-day *minimum* period for processing an application. Even if we were to accept relator's version of a sixty-day processing period, when he files an application in April and claims inordinate delay in mid-June, his position is not tenable. Furthermore, in *Halpin* there was clear evidence that Halpin's commanding officer put the application in his desk and refused to act upon it.

There is no such proof, nor any such allegation, in the instant case.

If we deny relator's request for preliminary relief, it means he must report to summer camp. However, while a request for conscientious objector discharge is pending, relator is given duty involving the minimum practicable conflict with his asserted beliefs. A.R. 635–20 states:

> "[I]ndividuals who have submitted formal applications * * * for discharge based on conscientious objection will be * * * assigned duties providing the minimum practicable conflict with their asserted beliefs pending a final decision on their applications. In the case of trainees, this means that they will not be required to train in the study, use, or handling of arms or weapons."

The Supreme Court has recently cited this regulation and concluded that "armed forces policy substantially meets the requirement of no combat training or service before an opportunity for a ruling on the claim." Ehlert v. United States, 402 U.S. 99, 105, 91 S.Ct. 1319, 1324, 28 L.Ed.2d 625 (1971).

■ We are reluctant to interfere with internal processes of the military while requests for discharge are pending. *Cf.* Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953); Gordon v. Resor, 323 F.Supp. 268 (S.D. N.Y.1970). The writer of this opinion was faced with a similar situation in United States ex rel. Tonzi v. Laird, 327 F.Supp. 1389 (E.D.Pa.1971). In *Tonzi*, the petitioner, a serviceman on active duty in the Navy with orders to report to Camp Pendleton, California on January 2, 1971 for transfer to Vietnam, filed with the Navy an application for discharge as a conscientious objector on

---

4. Relator filed his petitions with this Court on June 16th and June 21st. The hearing was convened on June 23rd at which time evidence was submitted and argument heard. We promised counsel a prompt decision in view of the announced intention of relator's counsel to appeal to the Court of Appeals for the Third Circuit if we denied him relief.

December 28, 1970. He then brought a proceeding for injunctive relief to bar his removal from this district pending action by the Navy on his application. In denying him relief, this Court, relying upon Kimball v. Commandant Twelfth Naval District, 423 F.2d 88 (9th Cir. 1970), held that there is no authority in the Department of Defense or Naval regulations which requires the postponement of overseas assignment pending the determination of a request for discharge as a conscientious objector, and that failure to grant such postponement did not constitute a denial of administrative due process. This Court does not find different principles to be applicable in the instant case merely because relator is in R.O.T.C., rather than on active duty for an extended period of time. That relator will be back at Drexel University, on inactive status, after the Army's adjudication of his claim, makes the facts of this case even stronger for denying relief than in *Tonzi* or *Kimball.*

### B. *The Question of Procedural Due Process.*

Relator's final contention is that the in-service remedies for discharge are violative of due process and should therefore not have to be exhausted. In support of this position, relator cites Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), where the Supreme Court held that the termination of welfare benefits, without notice and prior to an opportunity to be heard, constituted a denial of due process. Relator argues, by analogy, that the procedure outlined in A.R. 135–25 is constitutionally defective because: (1) the applicant has no opportunity to appear before either the review board or the commanding officer; (2) the applicant *a fortiori* cannot cross-examine the officers (psychiatrist, chaplain and O–3 interview-er) as to the grounds upon which their recommendations were made; and (3) there is no provision that the decision-maker be impartial.

The implications of this argument are enormous. If sustained, they would completely revolutionize in-service discharge procedure. They would necessitate transportation of men long distances to testify and would consume vast amounts of time before various reviewing boards and officers. We do not flee from the enormity of these implications. We simply find no authority to support the contention that the present military procedures for review of in-service conscientious objector discharges are unconstitutional, and we further believe that the recent case of Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), impliedly indicates the Supreme Court's approval of the present in-service procedures for obtaining a conscientious objector discharge. In holding that local boards cannot reopen a registrant's classification for conscientious objector claims made subsequent to the issuance of an induction order and that these claims must be asserted through in-service proceedings, the Court noted that "requiring in-service presentation of post-notice claims would deprive no registrant of any legal right."

## III.  CONCLUSION

Among factors to be considered in determining entitlement to a preliminary injunction is the probability of success in the underlying suit. As we see it, the question here is probability of success on the issues of exhaustion and due process, not on the underlying merits of relator's habeas corpus petition. For the reasons cited above, we find no probability of success.