**Kirby QUINN et al.**

**v.**

**UNITED STATES of America.**

**Civ. A. 75-2966-C.**

United States District Court,
D. Massachusetts.

July 25, 1975.

Arthur L. Johnson, Somerville, Mass., for plaintiffs.

James N. Gabriel, U.S. Atty., William A. Brown, Asst. U.S. Atty., for defendant.

## OPINION

CAFFREY, Chief Judge.

This is a civil action for preliminary and permanent injunctive and declaratory relief. The fourteen named plaintiffs are members of the United States Marine Corps Reserves. Defendants are the United States, the Secretary of the Navy and several named officers of the United States Marine Corps. Jurisdiction of this Court is invoked on the basis, *inter alia* of 28 U.S.C. §§ 1331, 1346, 2201 and 5 U.S.C. § 701 *et seq*. The matter came before the Court for hearing on plaintiffs motion for a preliminary injunction against the enforcement of a Marine Corps regulation promulgated in February 1974 · which regulation allows reservists to wear so-called "short hair wigs" on weekend drills but proscribes the wearing of such wigs during a fourteen-day summer training period of active duty.

At the hearing plaintiffs called no witnesses, but filed affidavits executed by four of the plaintiffs. Defendants called as witnesses Major General Michael P. Ryan U.S.M.C., Director of Ma-

rine Corps Reserves, Lieutenant Colonel John Salesses, Commanding Officer, 1st Battalion, 25th Marines and Captain Joseph Murphy, Commanding Officer, Headquarters and Service Company, 1st Battalion, 25th Marines.

After hearing, I find and rule as follows.

The leading case in this general area of the law is *Orloff v. Willoughby*, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842, a case in which the Supreme Court ruled that habeas corpus is not available "to determine whether specific assignments of duty fall within the basic classification of petitioner." (at 93, 73 S.Ct. at 540). The Court also observed (at 93, 73 S.Ct. at 540) "there must be a wide latitude allowed to those in command" and also "judges are not given the task of running the Army." The Court further noted (at 94, 73 S.Ct. at 540) "Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters."

The scope of the language in *Orloff* would appear to have been somewhat narrowed by the Court of Appeals for this Circuit in a case involving the on-duty wearing of wigs by members of the Massachusetts Army National Guard. In *Friedman v. Froehlke*, 470 F.2d 1351 (1 Cir. 1972), Chief Judge Coffin speaking for the Court observed (at 1352–53): "The narrow issue is whether the Guard may require reservists, whose time spent in military duty is but a very small fraction of the time spent in civilian pursuits, to conform to Army haircut requirements. This is the threshold question, assumed in *Orloff v. Willoughby, supra*: is such a requirement, under the circumstances of this case, a 'legitimate Army matter'? If *Orloff's* staking out of an exclusive military jurisdiction to determine 'legitimate Army matters' is to have any other meaning than that the Army may determine any matter which it sees fit to determine, there must exist a minimal bur-

den to bring the determination within the boundaries of legitimacy." . . . and (at 1353): "The interest of plaintiffs . . . is in this circuit treated as a freedom protected against unjustified encroachment . . . insofar as members of the reserve are concerned . . . the right to wear their hair as they please is not so trivial as to be denied without any service-connected reason."

Thus, the issue to resolve herein is have the defendants sustained the "minimal burden" of establishing that there exists a service-connected reason for the regulation being challenged.

I find that there is a material and substantial difference in the nature, kind and intensity of physical and mental activities necessarily involved in two weeks of in-the-field active duty on maneuvers, as contrasted with monthly weekend drills at an armory or firing range. On the basis of the testimony of Lt. Col. Salesses, who I find to be an articulate and credible witness, that plaintiffs' company will spend one week moving over rough terrain, firing live ammunition from rifles, machine guns, 81 m.m. mortars and 106 recoilless rifles (an artillery piece), I find that they also will be using live flame throwers as offensive weapons during this period. During this same time, the company will be in simulated battle conditions, living in the rough with no barracks, mess hall or other civilian niceties available. There will be no showers or plumbing available for personal hygiene. The only facility for washing or shaving will be water contained in helmets.

I further find that during the second week plaintiffs will be engaged in simulated combat with another Marine company, again maneuvering under the same conditions, but using blank ammunition. They also will be involved in coordinating a tank battalion with infantry companies. Additionally, during this period, plaintiffs will be involved in the difficult and hazardous rappelling, i. e. climbing down the side of cliffs on ropes.

In finding that plaintiffs, who concede that they have an obligation to maintain Marine appearance standards, cannot do so during strenuous activities of this type, I have in mind the testimony of Captain Murphy that he has seen wig-wearers not in conformity with military standards as a result of such non-strenuous activities as walking along a corridor inside a building.

I further find that the active duty required of these men is hot, strenuous and dirty work, the impact of which as to hotness and sweatiness, would be considerably increased under combat helmets and helmet liners, both of which are required to be worn on maneuvers. I find that the use of wigs under these conditions has a serious potential of causing safety and health hazards.

On the basis of the testimony of General Ryan, who has served in positions from platoon leader up to brigade commander and division commander, that the Marine Corps has a radically different basic mission than the other branches of the armed forces which allow use of wigs on summer duties, I find that the Marines are primarily the assault force of this country, whose obligation is well expressed in the Corps' motto "Semper Paratus."

I further find that an assault force has an obligation to maintain a high morale in its troops as part of its readiness. I find that it is essential to the proper functioning of an assault force that its members have a conviction at all times of the seriousness of the business.

I further find that appearance alone is a significant factor in the successfulness of the operations of an assault force, as was detailed by General Ryan in his testimony, as to the effect of the mere appearance of flak-jackets and "spit and polish" in riot control.

On the basis of the testimony of all three officers, I find that the use of wigs on active duty has a negative effect on the morale of the unit as a whole.

■■ It is axiomatic that in order to prevail, a party seeking a preliminary

injunction must be able to show a probability of success on the merits. *Automatic Radio Mfg. Co. v. Ford Motor Co.,* 390 F.2d 113 (1 Cir. 1968), *cert. den.* 391 U.S. 914, 88 S.Ct. 1807, 20 L.Ed.2d 653 (1968). I find that plaintiffs have not shown a probability of success on the merits because defendants have established that there exist legitimate military reasons as the basis of this regulation within the requirements of *Friedman v. Froehlke, supra.*

As a separate and independent reason for having denied injunctive relief, I find that plaintiffs are clearly guilty of laches in waiting until July 18, 1975 to commence a law suit challenging a regulation issued February 12, 1974. See *Jamesbury Corp. v. Worcester Valve Co.,* 443 F.2d 205, 210 (1 Cir. 1971).

Accordingly, the motion for injunction is denied.