**VILLAGE OF FAIRMONT CITY, ILLINOIS, St. Clair County, Illinois, a municipal corporation, Plaintiff–Appellant,**

v.

**UNION ELECTRIC COMPANY, a foreign corporation, Defendant–Appellee.**

No. 98–2121.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 7, 1998.

Decided Jan. 28, 1999.

Rehearing Denied March 8, 1998.

Paul P. Waller, III (argued), Walker & Williams, Belleville, IL, for Plaintiff–Appellant.

Thomas F. Hennessy (argued), III, Thompson & Coburn, Belleville, IL, for Defendant–Appellee.

Before COFFEY, FLAUM, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

A court suspects trouble in a case when each side accuses the other of changing its position "as nimbly as if dancing a quadrille."[1] On this point, both sides to this appeal are right. The dispute before us is between a village and its electric power supplier. It concerns the village's effort to collect a franchise fee from the utility. Judge William D. Stiehl entered summary judgment for the company and then denied the village's request to amend the judgment. This appeal followed.

■ In 1964 the Village of Fairmont City, Illinois, enacted Ordinance 286, which granted the Union Electric Company the exclusive right to construct and maintain poles, towers, wires, etc., and supply electricity to residents, in exchange for which the company agreed to pay an annual franchise fee of around $20,000 a year. With permission from the Illinois Commerce Commission, the franchise fees were collected from the utility's consumers as add-ons to their electric bills. The agreement was to run until December 2, 1994. When a village enacts such an ordinance, which is like an offer to an entity to do business with the village, a contract is formed when the business formally accepts the offer.

On August 29, 1994, as the expiration of Ordinance 286 neared, William Hutchings of Union Electric wrote to the president of the board of trustees of Fairmont City, enclosing a proposed ordinance which would extend the franchise agreement for an additional 20

1. *Orloff v. Willoughby,* 345 U.S. 83, 87, 73 S.Ct.    534, 97 L.Ed. 842 (1952).

years. The proposal included a franchise fee which would be an amount, if any, by which a percentage of gross receipts exceeded the aggregate amount of taxes imposed (sales taxes, occupation taxes, license taxes), other than general taxes on tangible property. Fairmont City did not act on this proposal.

Ordinance 286 expired, but Union Electric continued to provide electricity and collect the cost of its franchise fee from its consumers. However, after the village objected to this practice, the company refunded to its customers all monies collected after the expiration of the ordinance. After operating without a contract for 9 months, on September 12, 1995, Hutchings sent the trustees a second letter and a copy of the same proposed ordinance he submitted back in August of 1994.

On November 15, 1995, Ordinance 509 was passed. It proposed the same rate for the franchise fee as in old Ordinance 286 and Hutchings' proposal, but it also required payment of the franchise fee quarterly, rather than annually, and, most importantly, it required a fee "in excess of the utility tax imposed" by another ordinance—Ordinance 303. Ordinance 509 also provided that the company "shall within thirty (30) days after such approval, file with the Village Clerk a written acceptance of the provisions of this Ordinance," and that if acceptance is not filed, the franchise shall become null and void. Union Electric never accepted the ordinance because, it says, it has a long-standing policy of not paying a franchise fee if a municipality also levies a gross receipts tax.

In its complaint, filed in the circuit court for St. Clair County, Illinois, Fairmont City sought a declaratory judgment that Union Electric is liable for all utility taxes and franchise fees due and that Ordinance 509 is valid. It also sought an accounting. The company removed the case to federal court and moved for summary judgment, contending that Ordinance 509 was void because it had not been accepted. Fairmont City alleged that the company accepted the ordinance by its actions in continuing to provide electricity and continuing, for a while, to collect what amounted to the franchise fee from its customers. The Village also claimed

it had a common law right to collect a fee and, if all else failed, it argued that the court should enforce Ordinance 509 under a theory of unjust enrichment. Then, even though it did not move to remand the case, Fairmont City argued that the Anti–Injunction Act, 28 U.S.C. § 1341, precludes federal courts from considering any claim that it is not entitled to require the company to pay the franchise fee.

■ We see no basis—in common law or in statutes in existence at the relevant time—for our concluding that Fairmont City is entitled to a franchise fee, and in the context of this case, not requiring the payment of a fee does not offend the Anti–Injunction Act. Our reasons follow.

We just referred to statutes in existence at the relevant time because the Illinois Legislature recently enacted the "Electricity Infrastructure Maintenance Fee Law," 35 ILCS 645, which became effective on August 1, 1998. Like everything else, the parties to this case disagree over its meaning. Union Electric seems to argue that the statute applies only to situations in which a franchise fee was in existence on the effective date of the new law. We agree that there is language in the law which could lead to that conclusion. Section 5–5 refers, for instance, to "[a]ny municipality that on the effective date of this Law had in effect a franchise agreement with an electricity deliverer may impose an infrastructure maintenance fee" in an amount specified in the law. However, the law also makes clear the right of a municipality to require a franchise contract, a right which would seem to be unnecessary if the statute only applied to those situations in which a contract already exists. Section 5–4 provides that a "municipality shall be entitled to require a franchise contract from an electricity deliverer as a condition of allowing the electricity deliverer to use any portion of any public right of way within the municipality" for the distribution of electricity. The contract shall be established by ordinance and shall be valid when accepted in writing. The appropriate fee rates are set out in the statute. But, as we said, this statute was not in effect when Union Electric and Fairmont City were locking horns. Therefore, although someday, somewhere, some court will

probably have to decide what this new Illinois law means, that task does not fall on us today.

Fairmont City argues, however, that the statute merely codified existing Illinois common law and that its purpose was to make the collection of fees uniform, not to establish a new right. The logical conclusion, it says, is that because this statute merely codifies the common law, Fairmont City has always had a right to demand a franchise fee even before the statute's effective date.

What there is of common law is found in *AT & T v. Village of Arlington Heights,* 156 Ill.2d 399, 189 Ill.Dec. 723, 620 N.E.2d 1040 (1993), a case, not surprisingly, read quite differently by the parties. In that case, AT & T was laying fiber-optic cable from one community (Glenview) to another (Rockford), and en route its lines passed through the village of Arlington Heights, which attempted to collect a fee of $2.50 for every foot of cable installed within its border. The Illinois court said the village could not collect the fee. AT & T, it reasoned, was simply attempting to get from "one side of town to the other"; the company was not "doing business" within Arlington Heights. The court held that the municipality had a right to charge reasonable regulatory fees for the use of its streets but that it could not hold those streets hostage for the purpose of raising revenue. The court also said, however, that AT & T and the municipality could have voluntarily entered into a contractual relationship under which AT & T would agree to pay for using the public street.

Union Electric reads the *AT & T* case to mean that, absent an agreement, franchise fees are not allowed; Fairmont City says that fees are allowed for services sold within the municipality as opposed to a telephone cable which is just passing through.

It is quite clear that if there is an agreement between the utility and the municipality, a franchise fee can be collected. That, in fact, was the situation between these parties for many years. However, after the old agreement expired, a new one was never reached. Nothing said in *Arlington Heights*—or in any other case to which we have been directed—makes us sanguine

about declaring that Fairmont City has such power. We think the district court was right to refuse to declare that it did.

■ Fairmont City also argues that because the utility continued to provide electricity after the expiration of the ordinance, an implied contract arose between the parties. We reject this argument as well. It was, in fact, Fairmont City which insisted that Union Electric refund the monies it collected to offset the fee after the expiration of the ordinance. Had the parties continued to operate in exactly the same way after the expiration of the ordinance as before, we might be more inclined to find an implied contract. But they did not. Fairmont City itself changed the status quo. How can it now argue that a contract, even an implied one, continued?

■ Similarly, we reject the argument that Union Electric has been unjustly enriched. Obviously there has been no tangible financial enrichment. It is not as if the company has been collecting and pocketing money from its customers to cover the cost of its franchise fee. What Fairmont City claims is that the company, by removing the franchise fee assessment from its electric bills, has lowered those bills and thus gained goodwill. Goodwill, therefore, ·is what the company has been unjustly enriched with. We cannot accept this argument as a basis for our imposing a fee, though we wonder why Union Electric objects so vehemently to the fee, which, as we know, is passed on to its customers. Perhaps there is, in fact, some intangible enrichment to the company. What we cannot conclude is that anything about the supposed enrichment, if it exists, is unjust.

■ Does our concluding that there is no basis in common law or under some contract theory for imposing a franchise fee mean that we are enjoining the collection of a state tax, contrary to the Anti–Injunction Act? The Act, 28 U.S.C. § 1341, provides that the district courts

shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and

efficient remedy may be had in the courts of such State.

We have been asked to require the payment of a fee. We see no basis on which we can do that. But we also are convinced that not to require the payment of this particular fee is vastly different from enjoining the assessment of a tax (or a fee) which has a clear basis in state law. We have not been directed to any state law, in existence at the time of these events, which provides for the imposition of a fee of this sort in the absence of an agreement between the parties.

The judgment of the district court is AF-FIRMED.