**Michael J. SHELTON, Petitioner.**

v.

**Carl L. BRUNSON, Col. U. S. Air Force, Commander 3500th Pilot Training Wing, Reese Air Force Base, Texas, et al., Respondents.**

**Civ. A. No. 5–980.**

United States District Court, N. D. Texas, Lubbock Division.

Dec. 10, 1971.

John J. C. O'Shea, Lubbock, Tex., for petitioner.

Willis T. Taylor, Lubbock, Tex., for respondents.

## MEMORANDUM OPINION AND ORDER

WOODWARD, District Judge.

Petitioner has filed his application for a writ of habeas corpus in this Court against the respondents seeking discharge from further service in the United States Air Force, and for certain injunctive relief. A hearing was held on said application in Lubbock, Texas at 2:00 p. m. on December 9, 1971 with the petitioner and his attorney present and the defendants being represented by the United States Attorney. It appears that petitioner is presently assigned to Reese Air Force Base, located within the Northern District of Texas, but that he is under orders to report on January 2, 1972 to another base for an overseas assignment. The Court finds that it has jurisdiction of the parties and subject matter herein.

This Memorandum Opinion shall constitute the Court's Findings of Fact and Conclusions of Law in this case.

Michael J. Shelton enlisted in the United States Air Force in June of 1966. From that time until the present Sergeant Shelton has had a medical history of hypertension and high blood pressure. This was known to his superiors in the United States Air Force at all times material to this matter. In early 1968 various personnel of the Air Force enlisted the interest of Sergeant Shelton in attending the Colorado State University for two years with a view to obtaining a commission upon his completion of that course. Physical examination on or about this time again indicated his high blood pressure, but one doctor, David H. Hild, on December 20, 1967, wrote a letter recommending that a waiver be granted Shelton so that he might enter this program. Shelton testified that he was told by Dr. Hild that such a waiver would also be effective when he had com-

pleted his studies and that this waiver would also cover his commissioning some two years hence. The file does not reflect that any waiver was ever issued but it is undisputed that he was admitted to this program and attended the Colorado State University for two years, satisfactorily completing his course there. There is no evidence other than that his service and conduct has been satisfactory in every respect.

Upon completion of this course, and while on leave in 1970, petitioner received a telephone call from Wright Air Force Base (from a sergeant stationed there) to the effect that his commission would be denied him because of his high blood pressure and because of his obesity. On July 7, 1970 notification was issued of the cancellation of his duties at an Officer Training School and ordering him to report to Reese Air Force Base and reducing him from the rank of E–5 to E–3.

Shelton then attempted through the administrative procedures of the Air Force to obtain relief, either through a discharge or by permission to complete the requirements to become a commissioned officer. At his request, reviews of his file and medical records have been conducted by the Air Force. The net effect was to deny his applications for discharge or for continuation in the officer training program. It was determined that he was not physically qualified to be commissioned because of his blood pressure and his weight. These denials for relief were made in spite of the recommendation for a waiver of medical requirements by several Air Force doctors. Petitioner has exhausted his administrative remedies.

In his application for a writ of habeas corpus in this Court, petitioner alleges that he was induced by fraudulent misrepresentations of representatives of the Air Force to enlist in the educational program at Colorado State University in that he was promised that upon completion of this course he would be commissioned. He was further told, according to his testimony, that he would be given a waiver of all physical defects pertaining to his high blood pressure and hypertension. He testifies that in reliance upon these representations, he reenlisted for a period of six years on April 15, 1968.

Shortly before completing his course at Colorado State University, Sergeant Shelton was examined by Air Force medical authorities. His weight was shown to be 195 pounds on April 21, 1970, 190 pounds on January 6, 1970 on a clinical record signed by a Dr. Krempen, when he was admitted for a physical examination at an Air Force hospital, and 180 pounds in a report by a Dr. Griffin, who examined him while he was in the hospital. His blood pressure ranged between 158/96 while in the hospital and 160/100 upon being admitted to the hospital. It is not contended that his blood pressure, absent medication, was within the permissible limits at the time he underwent the required physical examination for entry into Officer's Training School. On May 11, 1970 one of the doctors, Dr. Greenberg, recommended that a waiver of the high blood pressure be given Shelton for purposes of commissioning, and this recommendation was concurred in by a Dr. Simmons on August 18, 1970, where it was indicated that Shelton's blood pressure could be controlled by medication. Nevertheless, the reviewing authorities of the United States Air Force have determined, after examining the entire record, that he is not physically qualified. The records do reflect that to be eligible for commission one must not weigh more than 183 pounds and that on several occasions during his military career Shelton's blood pressure has exceeded the limits for a commissioned officer.

Sergeant Shelton denies that he ever weighed as much as 195 at any time and insists that these records are incorrect. He offers as an explanation the fact that such weight was taken while he was fully clothed.

Petitioner's Exhibit 3 is his six year enlistment contract. Paragraph 54 of

this contract, sworn to by him on April 15, 1968, reads as follows:

"I have had this contract fully explained to me, I understand it, and certify that no promise of any kind has been made to me concerning assignment to duty, geographical area, schooling, special programs, assignment of Government quarters, or transportation of dependents except as indicated. ————."

The execution of this reenlistment contract with the above paragraph is sufficient answer to Sergeant Shelton's allegations of fraud and misrepresentations. Although some personnel of the Air Force undoubtedly tried to "sell" these programs to him and medical officers did recommend a waiver, none of these persons had authority to bind the Air Force as to its future actions concerning petitioner. Petitioner did not have a right to rely on any such representations concerning future waiver of his high blood pressure or hypertension; and in fact, Petitioner's Exhibit 3 conclusively shows that petitioner did not rely on any such alleged representation when he reenlisted. The Court finds as a fact that petitioner reenlisted on April 15, 1968 because of the educational benefits he was to receive at Colorado State University, the $772.20 bonus paid him at that time, and the possibility that he might obtain a commission. However, such a commission could only be granted him subject to the regulations of the Air Force. Petitioner has failed to satisfy such regulations with respect to his medical condition.

This reduces the sergeant's complaint to the fact that the review of his medical records is incorrect and that he should be allowed to terminate his enlistment with the United States Air Force at this time if they refuse to give him a commission. This Court does not have authority to review such administrative matters as are here presented. The Air Force's interpretation of its own medical records of its personnel cannot be reviewed by a court unless there is an absolute showing of abuse of discretion, which petitioner has failed to show to this Court. As a matter of fact, the Court finds that there is a sufficient basis in the medical records of Sergeant Shelton to justify the decision of the Air Force not to commission him as an officer. It is not for this Court to give relief in those cases where personnel in the Armed Forces have been aggrieved by a failure to be awarded a commission, even though the evidence is conflicting as to whether or not he has met certain medical requirements. A judgment as to whether medical standards have been met is properly made by the Armed Forces based upon their own expertise and knowledge of their requirements and needs. In the absence of a showing of arbitrary discrimination, gross abuse of discretion, or capricious action (all of which are absent here) the Courts should not interfere. Orloff v. Willoughby, 345 U.S. 83, 73 S. Ct. 534, 97 L.Ed. 842 (1953).

Petitioner complains that the Air Force's regulations provide different medical requirements for officers than those required of enlisted personnel and that this constitutes a constitutionally impermissible discrimination that would entitle him to relief. Here again, and as testified by petitioner's own witness, it is only proper that the Armed Forces, using their own expertise and knowledge, be permitted to promulgate reasonable regulations that would contain such differences. The regulations involved here are reasonable and do not afford the basis for any charge of constitutional defectiveness.

It is therefore ordered that the petitioner's prayer for relief be denied and the case is hereby dismissed.