Michael J. SHELTON, Petitioner-
Appellant,

v.

Carl L. BRUNSON, Col. U. S. Air Force,
Commander 3500th Pilot Training Wing,
Reese Air Force Base, Texas, et al., Re-
spondents-Appellees.

No. 72-1042.

United States Court of Appeals,
Fifth Circuit.

Feb. 9, 1972.

John J. C. O'Shea, Lubbock, Tex., for
petitioner-appellant.

Eldon B. Mahon, U. S. Atty., Fort
Worth, Tex., Robert Wilson, Asst. U. S.
Atty., Lubbock, Tex., for respondents-
appellees.

## ORDER

Before WISDOM, GODBOLD and
RONEY, Circuit Judges.

BY THE COURT:

The petitioner's motions for injunc-
tion pending appeal are denied.

WISDOM, Circuit Judge (dissenting):

I would grant Sergeant Shelton's re-
quest for an injunction pending appeal.
In my opinion, Shelton has set forth sub-
stantial reasons to question the validity
of the contract of reenlistment on which
the Air Force now bases its authority to
disrupt the life of Shelton and his fam-
ily by transferring Shelton to Iceland—
half way round the world from Florida,
South to North, if not East to West.
It appears that various officers made
representations to Shelton that the med-
ical waiver given him to begin the "boot-
strap" officers' program by attending
Colorado State University would carry
over and permit him to be commissioned
upon completion of Officers Training
School. In consideration of such assur-
ances, Shelton says, he agreed to reen-
list for six years.

The lower court, 335 F.Supp. 186, re-
jected Shelton's contentions. It reason-
ed, first, that Shelton's reenlistment con-
tract contained a provision (paragraph
54) by which Shelton waived his right to
rely on recruiters' representations as to
future commissioning and medical waiv-
ers. But close reading of paragraph 54
discloses that the paragraph does not
apply or at best applies only tangentially
to the representations made to Shelton.[1]
And it is hornbook law that "[s]ince one
who speaks or writes, can by exactness of
expression more easily prevent mistakes
in meaning, than one with whom he is
dealing, doubts arising from ambiguity
of language are resolved in favor of the
latter . . . ." Williston on Contracts
§ 621. This principle has been applied
most severely when "contracts of adhe-
sion" are involved—insurance policies,
parking tickets, airline tickets, and the
like. It might well be argued that the
form enlistment contract in dispute here
would make an appropriate addition to
that catalogue.

The second justification offered by the
district court was that the Air Force re-
cruiters and doctors lacked authority to
bind the Air Force to the commitments
they may have made Shelton. But to me
this conclusion that the recruiters lacked
*actual* authority to bind the Air Force
is irrelevant. The question is, rather,
one of *apparent* authority: whether it
was reasonable for Shelton to conclude
that the recruiters had the authority to
bind the Air Force which their very

[1]. Paragraph 54 of the enlistment contract
read as follows:
"I have had this contract fully ex-
plained to me, I understand it, and
certify that no promise of any kind has
been made to me concerning assignment
to duty, geographical area, schooling,
special programs, assignment of Gov-
ernment quarters, or transportation of
dependents except as indicated."

function, and apparently their own words, suggested they would have.

Finally, the district court found that Shelton enlisted not because he was promised a commission but in the hope of a commission, and because he sought educational advancement and a financial bonus. This finding, standing alone, might suffice under appropriate principles of contract law to sustain the denial of habeas corpus in this case. But we cannot tell whether the finding was made *because of* the accompanying (and in my view erroneous) legal analysis or *in addition to* that analysis, and in support of it.[2] At the least, then, it seems necessary to require further finding of fact, uninfected by considerations of contractual waiver and actual authority. In short, I have genuine doubts that the Air Force has demonstrated the legality of its custody of Shelton. It is true that there is possible inconvenience to the Air Force in keeping Shelton stateside until we resolve his appeal. But this inconvenience is small when compared with the injustice of denying him a commission, requiring him to serve four extra years induced by unfulfilled promises and, adding insult to injury, shipping him from Florida to Iceland before his case could be heard on appeal.

I respectfully dissent.

---

2. After quoting Paragraph 54 in full, the district court set forth its reasons for rejecting Shelton's allegations of fraud and misrepresentation.

> The execution of this reenlistment contract with the above paragraph is sufficient answer to Sergeant Shelton's allegations of fraud and misrepresentations. Although some personnel of the Air Force undoubtedly tried to "sell" these programs to him and medical officers did recommend a waiver, none of these persons had authority to bind the Air Force as to its future actions concerning petitioner. Petitioner did not have a right to rely on any such representations concerning future waiver of his high blood pressure or hypertension; and in fact, Petitioner's Exhibit 3 conclusively shows that petition-er did not rely on any such representation when he reenlisted. The Court finds as a fact that petitioner reenlisted on April 15, 1968 because of the educational benefits he was to receive at Colorado State University, the $772.20 bonus paid him at that time, and the possibility that he might obtain a commission. However, such a commission could only be granted him subject to the regulations of the Air Force. Petitioner has failed to satisfy such regulations with respect to his medical condition.

All these reasons are contained in the same paragraph and there is no indication at all of the logical relation among them. (Petitioner's Exhibit 3 was his six-year enlistment contract.)