Jorge SURO, Plaintiff,

v.

**Salvador N. PADILLA, personally and as Adjutant General, Puerto Rico National Guard, Defendant.**

Civ. No. 76–1047.

United States District Court, D. Puerto Rico.

Oct. 29, 1976.

15

José A. Suro, Santurce, P. R., for plaintiff.

Julio Morales Sánchez, U. S. Atty., San Juan, P. R., for defendant.

## MEMORANDUM OPINION AND ORDER

PESQUERA, District Judge.

This action seeks judgment permanently enjoining plaintiff's separation from the Puerto Rico National Guard, and declaring that the interpretation and application of National Guard Regulation 635–102 by the defendant in his determination to separate plaintiff from his service with the Puerto Rico National Guard (PRNG) is invalid and contrary to 32 U.S.C. § 709 et seq. and unconstitutional because in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States.

Plaintiff, Col. Jorge Suro, is Chief of the Selective Service Section of the PRNG. He has held said position since November 26, 1969, having received commendable ratings as an officer throughout all his military career.[1] Defendant MG Salvador Padilla is Adjutant General of the PRNG.

---

1. On March 12, 1970, plaintiff was granted by the National Guard Bureau a retention on his position to age sixty (60), that is, until March 1983.

On January 29, 1976, an Army Retention Board was convened for the purpose of considering plaintiff's retention in the PRNG. Notice was given to plaintiff of such convening, although he was not allowed to appear before such Board, nor to be represented by counsel thereat. National Guard Regulation No. 635–102, which deals with officers selective retention, provides in part:

"9 . . . .

b Composition

(1) Boards will be composed of three commissioned officers, at least one of whom must be an Active Army Officer, and all of whom must be of equal or higher grade and, except for the Active Army member, senior in rank to each officer whom the Board considers for selective retention."

The Retention Board was composed as follows:

1. Reynold L. López—B.G. P.R.A.R.N.G.

2. Bibb A. Underwood—Col. U.S.A.

3. Rusian B. Bailey—Col. U.S.A. ADVGP N.G.P.R.

Both Col. Underwood and Col. Bailey, although being of the same rank as plaintiff, were his juniors with respect to time in service.

On February 17, 1976, defendant's office communicated to plaintiff that he was being separated from the PRNG. Such decision was subsequently ratified and made final by further correspondence between the parties.

Plaintiff alleges that by not being permitted to appear in person before the Retention Board, thus limiting his right to be heard, the due process of law was violated. Furthermore, it is alleged, *inter alia,* that the composition of the Board violated the aforementioned National Guard Regulation, specifically the provision regarding seniorship requirements.

2. *Pauls v. Secretary,* 1 Cir., 457 F.2d 294; *Reaves v. Ainsworth,* 219 U.S. 296, 306, 31 S.Ct. 230, 55 L.Ed. 225; *Orloff v. Willoughby,* 345 U.S. 83, 73 S.Ct. 534; *Cortright v. Resor,* 2

It is apparent that said provision has not been previously interpreted with respect to the particular situation involved herein. In a letter dated August 16, 1976, BG Joseph Jelinek, Deputy Director of the Army National Guard, states:

"Whether this board (sic) composition is lawful depends on interpretations of para 9 b(1), NGR 635–100, and this provision is very much open to conflicting interpretations."

General Jelinek himself goes on to interpret said provision as complied with in the present case. Plaintiff avers that this is not so.

On September 30, 1976, defendant filed a motion to dismiss/or for summary judgment wherein this Court's jurisdiction is questioned on various grounds. We are forced to first consider such jurisdictional attacks.

I

At the onset, defendant argues that plaintiff served at the pleasure of the President, and that accordingly he has no tenure in his position within the PRNG.

It has often been decided and reiterated that military officers serve at the pleasure of the President and have no constitutional right to be promoted or retained in service, and that the services of an officer may be terminated with or without reason.[2] We have no dispute with such well established law. Nevertheless, it has also been held that an agency's failure to comply with its own regulations renders its actions contrary to law. *Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681. It is averred by plaintiff that the composition of the Retention Board clearly violates National Guard regulations. The above stated doctrine of service at the pleasure of the President notwithstanding, this Court is not precluded from entertaining an action in which failure in compliance of administrative regulations is alleged.

Cir., 447 F.2d 245; *Arnheiter v. Chafee,* 9 Cir., 435 F.2d 691; *Muldonian v. United States,* 432 F.2d 443, 447, 193 Ct.Cl. 99; *Payson v. Franke,* 108 U.S.App.D.C. 368, 282 F.2d 851, 854.

## II

It is additionally brought to our attention that this Court lacks jurisdiction under Section 1331 of Title 28 U.S.C.A. over the present cause of action. In support of this point, defendant argues that there is no property interest that could effectively be protected under the Due Process Clause of the Constitution, thus failing plaintiff to raise a cause of action under federal question jurisdiction.

In ascertaining what are protected property interests the Court in *Board of Regents v. Roth,* 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548, first instructed us to "look not to the 'weight' but to the nature of the interest at stake". It then defined the nature or attributes of property interests as follows:

> "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined." (Id. at 577, 92 S.Ct. at 2709)

If plaintiff were to be effectively separated from his position, he would lose an annual income which added until he reaches the retirement age of sixty would total forty-two thousand dollars ($42,000.00). He would also lose his position as Colonel in the PRNG, being deprived of a significant part of his retirement benefits resulting from said position. It is true that the nature of property interests is not identical for military officers as for civil service employees. Nevertheless, to hold that officers have no property interests at all would be inconsistent with the spirit of the Constitution. It would certainly undermine the reasonable expectations of able members of the Armed Forces, with the inevitable concomitant results. We thus believe that plaintiff's present status and expectations therein placed constitute protected rights, and as such cannot be subject of deprivation without the due process of law.

## III

Defendant further alleges that the procedure followed by the Board of Retention in failing to afford plaintiff a hearing and right to counsel and to be present in the proceedings is not violative of due process. We need not consider such matters at this moment for reasons which will become evident as we discuss defendant's final argument.

## IV

It is finally asserted that plaintiff has failed to exhaust his administrative remedy before the Army Board for Correction of Military Records (ABCMR), 32 CFR 581.3 pursuant to 10 U.S.C.A. § 1552.

Courts have approached arguments such as this one in various manners.[3] In *Rew v. Ward,* D.C., 402 F.Supp. 331 (1975), Judge Bratton performed an exhaustive analysis on the nature of the Board of Correction of Military Records, and its place within the doctrine of exhaustion of administrative remedies. In discussing the doctrine exposed in *McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), he stated:

> "Accordingly, the exercise of the Court's discretion with regard to the exhaustion defense herein necessarily entails investigation of the following factors: (1) the adequacy of the remedy before the BCMR; and (2) will requiring the plaintiff to pursue her administrative remedy serve the policies underpinning the doctrine. To this should be added a third factor concerning the government's interest in limited judicial interference in military matters." (citations omitted) (Id. at p. 334)

After describing the proceedings in the BCMR, the Court concluded:

> "In light of the above description of the Air Force BCMR it can be said with

---

**3.** See *Rew v. Ward,* D.C., 402 F.Supp. 331 (1975) at p. 333, n. 6 and F.

conviction that: (1) for Airman Rew to seek relief by pursuing her administrative remedy would not only be expensive and time consuming but also totally useless; and (2) the only 'policy' to be served by compelling Airman Rew to first present her claims to the BCMR would be to so discourage a past serviceman from trying to seek relief from a governmental bureaucracy that the serviceman eventually capitulates and relinquishes her claims in frustration, thus relieving the Air Force of the responsibility of dealing with the claims. The men and women of our nation's Air Force deserve better treatment in return for their service." [4] (Id. at p. 336)

■ Statutes providing for correction of military records and for review of discharges and dismissals were enacted initially for the purpose of avoiding a large number of "private" bills in Congress by which formerly discharged servicemen sought to have the nature or character or type of discharge certificate corrected because of real or imaginary defects in the military system which they felt had prejudiced them. *Sims v. Fox,* 5 Cir., 492 F.2d 1088 (1974) They were not intended to affect judicial jurisdiction, *Nelson v. Miller,* 3 Cir., 373 F.2d 474 (1967); *Ogden v. Zuckert,* 111 U.S.App.D.C. 398, 298 F.2d 312 (1961).

■ We believe then, that we have and should exercise such jurisdiction. Nevertheless, we further believe that the ABCMR should have a chance to interpret the Army regulations at stake herein, before we may enter in the merits of this case. Although there are serious doubts as to the expediency with which the BCMR considers matters such as are present before us, we believe that the Board is entitled to review plaintiff's record and consider whether allegations presented by plaintiff present a need for the correction of his record, and in such case afford him a remedy within the intraservice corrective measures.

■ We must consider now whether in the exercise of our jurisdiction we should afford plaintiff a temporary remedy. The United States Court of Appeals for the First Circuit has held that a large discretion rests in the trial court in determining whether temporary injunctive relief is warranted.[5] Citing *Quaker Action Group v. Hickel,* 137 U.S.App.D.C. 176, 421 F.2d 1111, 1116, this Circuit has noted:

"The standards which should guide the decision to grant a preliminary injunction have often been stated. The movant must show a substantial likelihood of success in the merits, and that irreparable harm would flow from the denial of an injunction. In addition, the trial judge must consider the inconvenience that an injunction would cause the opposing party, and must weigh the public interest as well."

After a thorough consideration of all of the points and contentions that arise from this case, we believe that plaintiff has succeeded to show a substantial likelihood of ultimate success in this litigation. As General Jelinek himself observed [6] NG Regulation No. 635–100 is very much open to conflicting interpretations. If plaintiff's interpretation were found to be right, the proceedings before the Retention Board will have been null and void, and a new Board will have to be convened.

Plaintiff's due process argument, as this Court sees it, may also be likely to succeed depending on whether it can be maintained that failure to provide him with the basic elements of the right to be heard violate plaintiff's due process in a case such as the present one. (See *Goldberg v. Kelly,* 397 U.S. 254, 266, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). We conclude that a likelihood to succeed has been shown by plaintiff herein. We must examine now whether it has been

---

4. We must point out that the nature and proceedings of the Army BCMR are very similar to those of the Air Force BCMR.

5. See *Pauls v. Secretary of Air Force,* 1 Cir., 457 F.2d 294 (1972).

6. See page 3 of this Memorandum Opinion and Order.

demonstrated that irreparable harm would flow from the denial of temporary relief.

In *Donovan v. Pennsylvania Company,* 199 U.S. 279, 26 S.Ct. 91, 50 L.Ed. 192 (1905), Justice Harlan, in citing with approval the Supreme Court of Illinois in *Chicago General Ry. Co. v. C., B. & Q. R.,* 181 Ill. 605, 611, 54 N.E. 1026, stated:

"'When irreparable injury is spoken of it is not meant that the injury is beyond the possibility of repair, or beyond the possibility of compensation in damages, but it must be of such constant and frequent recurrence that no fair or reasonable redress can be had therefor in a court of law.'" (citations omitted) (199 U.S. page 305, 26 S.Ct. page 99)

If the determination of non retention and separation were made effective, plaintiff will immediately lose federal recognition as an Army Officer of the PRNG. He will also lose his status as Chief of the Selective Service Section of the PRNG. This would imply a loss of an annual income of approximately six thousand dollars ($6,000.00) and a total amount of forty two thousand dollars ($42,000.00) for the period until he reaches the retirement age of sixty.

An appeal to the BCMR does not stay proceedings. It is thus apparent that the Selective Service Section of the PRNG cannot remain without a director for a long time. Accordingly, should we fail to grant plaintiff a temporary relief, he will surely lose his position in the PRNG while the bureaucratic apparatus of the BCMR goes into function with no time limits and no real obligation to entertain the case.[7] Consequently, plaintiff has shown that he will suffer irreparable harm if temporary relief is not granted.

Certainly, by issuing a preliminary injunction no inconvenience is caused to defendant or to the PRNG. Col. Suro has received commendable ratings all throughout his military career. All of the personal data, tests, ratings and opinions submitted for the record, including reports submitted by stipulation of parties herein, describe plaintiff as highly capable, brilliant, responsible and apt, having excelled in a great number of his duties both as an officer and as Director of the Selective Service Station of the PRNG. Surely the purposes underlying non retention in a case such as this one will not be undermined by retaining plaintiff in his position while the ABCMR entertains his pleadings. Moreover, we firmly believe that it could only benefit public interest and the United States Army to afford officers equitable relief when there is sufficient weight and reasoning behind allegations of violation of due process.

For the above stated reasons, it is

ORDERED, ADJUDGED and DECREED that plaintiff is entitled to a preliminary injunction restraining the defendant, General Salvador M. Padilla, his successors, agents and subordinate officers, during the pendency of this action or until the final termination thereof, or until the Court shall otherwise order, from separating plaintiff from the position of Colonel in the Puerto Rico National Guard; and it is further

ORDERED, ADJUDGED and DECREED that plaintiff shall file a bond in the sum of five thousand dollars ($5,000.00) as required by Rule 65(c) of the Federal Rules of Civil Procedure.

It is further ORDERED, ADJUDGED and DECREED that plaintiff shall plead his case before the Army Board of Correction of Military Records with great vigor and shall file with this Court a bi-monthly report of the status of the proceedings before said Army Board of Correction of Military Records; and it is further

ORDERED, ADJUDGED and DECREED that upon plaintiff's failure with any part of this order pertaining to him, the instant injunctive order will be dismissed.

This Memorandum Opinion and Order constitutes our finding of facts and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure.

---

7. See discussion of this point at *Rew v. Ward,* D.C., 402 F.Supp. 331 (1975) pp. 333–337.