**Jorge SURO, Plaintiff,**

v.

**Orlando LLENZA, et al., Defendants.**

**Civ. No. 80–2088.**

United States District Court,
D. Puerto Rico.

Feb. 10, 1982.

Jorge M. Suro, Santurce, P. R., pro se.

Raymond L. Acosta, U. S. Atty., Hato Rey, P. R., for defendants.

## OPINION AND ORDER

PÉREZ–GIMÉNEZ, District Judge.

The present action was brought by plaintiff seeking to enjoin defendants from reassigning him from his present position as Section Chief in the Selective Service Section of the Puerto Rico National Guard

(hereinafter PRNG) to the position of G.2 Intelligence Office. Such reshuffling of duties would bring about the concomitant loss of plaintiff's federal recognition as a member of the PRNG and the subsequent loss of a total of [1] Fifteen Thousand Dollars ($15,000.00) of income and the retirement benefits resulting therefrom. Named as defendants were Orlando Llenza, personally, as the Adjutant General of the PRNG and as representative of the National Guard Bureau; and the Chief, National Guard Bureau.

On September 25, 1980, the Court entered a temporary restraining order prohibiting the defendants from relieving plaintiff from his present position and from withdrawing his federal recognition. After various extensions to the TRO were stipulated by the parties and granted by the Court, the hearing on the preliminary injunction was called on November 21, 1980, at which time statements of counsel were heard. Instead of receiving evidence, and at the request of the parties, they were granted time to file motions to dismiss and replies thereto. Motions were filed on November 24 and December 15, 1980.[2] The TRO was extended until the motions were ruled upon.

Plaintiff's opposition to both motions to dismiss was filed on December 29, 1980, and additionally, plaintiff requested that summary judgment be entered in his favor. Federal defendants filed a subsequent motion to dismiss on February 17, 1981, adducing four reasons in support thereof, to wit; (1) the Court lacks subject matter jurisdiction over them; (2) plaintiff fails to state a claim upon which relief can be granted; (3) plaintiff's claim is neither justiciable nor reviewable; and finally, (4) plaintiff has failed to exhaust an available administrative remedy. Likewise, Commonwealth de-

fendants filed on February 20, 1981, their opposition to summary judgement and their reply to the opposition to the motion to dismiss. The matter is now ripe for adjudication.

Plaintiff was commissioned as Second Lieutenant in the Armed Forces of the United States on May 27, 1942. After serving during the Second World War, plaintiff was appointed as Captain in the PRNG on November 10, 1946. Plaintiff then was assigned to the Selective Service Section of the PRNG on November, 1959, and on November 24, 1969, he was promoted to the position of Chief of the Selective Service Section of the PRNG. On March 12, 1970, plaintiff was granted by the National Guard Bureau a retention in his position as Chief of the Selective Service Section of the PRNG to age sixty (60), that is, until March 1983. On August 10, 1971, he was again promoted to the rank of Colonel in the PRNG. On June 23, 1980, plaintiff was reassigned by defendant Llenza from his position as Chief of the Selective Service Section of the PRNG to the position of G.2 Intelligence Office.

Previous to plaintiff's reassignation, on June 19, 1980, Colonel Wilfredo Meléndez, Personnel Officer of the PRNG, sent a memorandum to defendant Llenza informing him that due to the terms of plaintiff's retention, he was not eligible for change in military status according to provisions of National Guard Regulation 635–100.

Defendant Llenza notified Suro on September 4, 1980, that he had been notified by the National Guard Bureau that plaintiff's federal recognition would be withdrawn effective September 27, 1980. In view of these circumstances, on September 16, 1980, plaintiff sent a letter to defendant Llenza requesting him to reconsider his decision of June 23, 1980. Since said letter was never

---

**1.** Plaintiff will reach age sixty (60) on March 1983. At the time the Complaint was filed, September 25, 1980, plaintiff had two and a half years (2½) to serve in his position, at an annual income of approximately Six Thousand Dollars ($6,000).

**2.** The first motion dated November 24 was filed by Orlando Llenza on behalf of federal defendants, National Guard Bureau, and Chief, National Guard Bureau. The December 15 motion was filed by Orlando Llenza in his official capacity as Adjutant General to the PRNG and as representative of the PRNG, the Commonwealth defendants.

answered by defendant, plaintiff sent another letter to the Governor of Puerto Rico requesting reconsideration of Llenza's decision.

On June 18, 1980, Dr. Bernard Rostker, Director of the Selective Service System, wrote to plaintiff to find out if he would be available to continue serving in the Selective Service System. And, finally, on March 10, 1981, plaintiff was informed by defendant Llenza that the Selective Retention Board which considered him had recommended his retention in his position in the Selective Service System.

## I. Subject Matter Jurisdiction

■ It has been held and reiterated that military officers serve at the pleasure of the President and have no constitutional rights to be promoted or retained in service and that the services of an officer may be terminated with or without cause. *Diliberti v. Brown*, 583 F.2d 950 (7 Cir., 1978); *Pauls v. Secretary of the Air Force*, 457 F.2d 294 (1 Cir., 1972). In spite of the above stated doctrine of service at the pleasure of the President, this Court is not precluded from entertaining an action in which failure to comply with administrative regulations is alleged. *United States v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954);

*Suro v. Padilla*, 441 F.Supp. 14 (D.C.P.R., 1976).

■ Plaintiff alleges that on March 12, 1970, he was granted by the National Guard Bureau a retention in his position in the Selective Service Section of the PRNG to age sixty, that is, until March of 1983. According to plaintiff, the statutory authority for his retention is derived from 10 U.S.C. § 3848(c)[3] and paragraph 6(d) of the National Guard Regulation 20–4, also known as 635–100, of November 30, 1969.[4] Thus, by reassigning him to G.2 Intelligence Office, the defendants violated the abovementioned administrative provisions, exposing him to loss of federal recognition for continued active service in the National Guard, and opening the door for this Court to entertain the present action.

Defendants, on the other hand, allege that the said National Guard Regulation 20–4 (635–100) does not provide nor has it ever provided that service members assigned to the Selective Service Section beyond their mandatory separation date and until age 60 are not eligible for a change in their military status. Therefore, in order to determine which of the contentions presented to this Court is legally sound, this Court will have to interpret the meaning and

**3.** "3848. Twenty-eight years: reserve first lieutenants, captains, majors, and lieutenant colonels

"(a) After July 1, 1960, each officer in the reserve grade of first lieutenant, captain, major, or lieutenant colonel who is not a member of the Retired Reserve shall, 30 days after he completes 28 years of service computed under section 3853 of this title—

"(1) be transferred to the Retired Reserve, if he is qualified and applies therefor; or

"(2) if he is not qualified or does not apply therefor, be discharged from his reserve appointment.

"(b) Each officer in the reserve grade of lieutenant colonel who has been recommended for promotion, and who would otherwise be removed from an active status under this section, shall be retained in that status until he is appointed or is refused appointment to the next higher grade.

"(c) Notwithstanding subsections (a) and (b) of this section, the Secretary of the Army may authorize the retention in an active status until age 60 of any officer of the Army National

Guard of the United States who would otherwise be removed from an active status under this section and who—

"(1) is assigned to a headquarters or headquarters detachment of a State or territory, the Commonwealth of Puerto Rico, the Canal Zone, or the District of Columbia; or

"(2) is employed as technician under section 709 of title 32, United States Code, in a position for which Army National Guard membership is prescribed by the Secretary.

"(d) . . . ."

**4.** "d. Officers assigned to the Selective Service Section, State Headquarters and Headquarters Detachment, may be retained for any period but not beyond the end of the month in which they reach age 60, provided they are otherwise qualified. Requests for retention should be submitted to the Chief, National Guard Bureau, at least 6 months prior to the date they would otherwise be removed from an active status under sections 3848 or 3851 of title 10, United States Code."

scope of 10 U.S.C. § 3848 and paragraph 6(d) of National Guard Regulation 20–4 (635–100), of November 30, 1969. Thus, there is subject matter jurisdiction over this action under 28 U.S.C. § 1331(a).

## II. Failure to State a Claim

### A

Plaintiff contends in this case that defendant Llenza's action of reassigning him from his position as Chief of the Selective Service Section of the PRNG to the position of G.2 Intelligence Office, is illegal and has the effect of depriving him of his acquired rights and property interest without due process of law. The grounds for plaintiff's allegation is that on March 12, 1970, he was granted, at the instance of the then Adjutant General of the PRNG, Alberto Picó, by the National Guard Bureau, a retention in his position in the Selective Service Section of the PRNG until age sixty, that is, until March 1983. According to plaintiff, defendant Llenza is duty bound, pursuant to regulations of the National Guard Bureau and by the actions of his predecessor from transferring him from his position.

Defendants allege that National Guard Regulation 20–4 (635–100) does not prohibit the separation from an active status, prior to age sixty, of a National Guard officer who has been assigned to the Selective Service Section of the State National Guard and who has been retained, beyond his mandatory removal date, in such position. Referring to the letter of March 20, 1970, from the National Guard Bureau to the Adjutant General of Puerto Rico, defendants allege that although Colonel Jorge Suro was permitted to remain in an active status until age sixty, this by no means vested any right upon Colonel Suro to any position in the Selective Service Section of the PRNG. On the contrary, the letter merely authorized the Adjutant General, in his sole discretion, to retain Colonel Suro in an active status until age sixty, provided he remains otherwise qualified. To defendants the proviso contained in the letter that plaintiff remain "otherwise qualified" included the requirement that Colonel Suro maintain an assignment in the Selective Service Section of the PRNG.

■ It appears that National Guard Regulation 20–4 (635–100) has not been previously interpreted in relation to facts as set forth herein. The wording of said regulation may seem to provide for different and conflicting interpretations, but in this instance it is plaintiff's interpretation of the regulation in question which convinces us to be the correct one.

Pursuant to 10 U.S.C. § 3848 (fn. 1, ante) on May 26, 1970, plaintiff would have been removed from active status, thus, losing his federal recognition from the Army National Guard of the United States and the PRNG since as of that date he would have completed the maximum years of service allowed by law. Desiring to keep plaintiff past his mandatory retirement date, Alberto Picó, then Adjutant General of the PRNG, on November 23, 1969, requested that the National Guard Bureau continue the retention of plaintiff until age sixty, that is, March 1983. The request to the National Guard Bureau was made in accordance with Section 6(d) NGR 20–4 (635–100) and 10 U.S.C. § 3848. On March 12, 1970, the National Guard Bureau granted General Picó's petition with the proviso that plaintiff "remain otherwise qualified".[5] This means, in the case of plaintiff, that he can continue in an active status as long as he remains otherwise qualified. There is no magic or hidden meaning that eludes us in analyzing the phrase "remains otherwise qualified". The simple, straight-forward

---

5. According to Exhibit 13 submitted by plaintiff in support of his opposition to the motion to dismiss and motion for summary judgment, the National Guard Bureau announced on June 10, 1975, new policies affecting paragraph 6(d), NGR 20–4 (635–100) of November 30, 1969.

Paragraph 3(c) states the new policy that: "Officers currently in a retained status as of July 1, 1975, may continue in an active status in accordance with the terms of their retention authority."

definition is found in Colonel Suro's own personnel record kept by defendants.

According to said record, since 1969 plaintiff has been Chief of the Selective Service Section of the PRNG; he has been promoted to the rank of Colonel in the PRNG and has been federally recognized as such; he has received repeated commendations from his superiors.[6] Furthermore, on March 10, 1981,[7] the Selective Retention Board of the PRNG recommended, and defendant Orlando Llenza, Adjutant General, PRNG, approved plaintiff's retention in the PRNG. Therefore, it is plaintiff's contention that his retention until March 1983 conferred to him tenure in his position as Chief of the Selective Service Section of the PRNG since plaintiff's only originally imposed requirement was to remain qualified.

█ Going one step further in ascertaining the import of the phrase "remain otherwise qualified" leads in the direction of which areas are the ones encompassed within the word "qualified". Once again, we must necessarily turn to plaintiff's Exhibits to search for our answer. Exhibit 16[8] reveals that once the Selective Service State Headquarters were eliminated, their duties and the implementation of the State Reconstruction Plan to activate the Selective Service System for Puerto Rico would now fall within the jurisdiction of the Chief of Section of the Selective Service Section, PRNG, and "these added responsibilities require the expertise of the officers who have been involved in the drafting and preparation of said plan. Under these circumstances it is considered that. . . your valuable experience and technical knowledge in these matters, now warrant your retention in the active service of the PRNG.". Again, plaintiff's

proficiency in the field of Selective Service System procedures appears in Exhibit 17.[9] Specific reference is made therein to plaintiff's ". . . outstanding service. . ." as ". . . a key factor in the progress we have made toward improving the mobilization readiness capability of the Selective Service System. . .". Replying to plaintiff's inquiry as to the reaction of the then Acting State Director of the State Headquarters For Selective Service to the proposed release of plaintiff from the PRNG Selective Service Section, Lt. Col. José A. Canals wrote to plaintiff on February 27, 1976 (Exhibit 15):

". . . The additional responsibilities to be assumed by the National Guard Selective Service Section of organizing the State Headquarters, if Selective Service System is reactivated, makes it advisable to have available experienced and trained officers with as much knowledge and background on the operations and future plans of the organization as is possible. . . ."

It is undisputable that plaintiff has fully complied with his obligation to "remain otherwise qualified" in the field of Selective Service System activities and procedures.

Additionally, we must give due consideration to General Picó's request of November 23, 1969, to retain plaintiff past his retirement age. It would certainly lack logic to have such a request made and have plaintiff serve at the Selective Service Section if at a later date plaintiff would be subject to a transfer to an Intelligence Office or any other office where his skills and technical knowledge would not be put to the best use. This reasoning is strengthened by defendants' own argument in their motion to dismiss.

"4. The Puerto Rico Army National Guard will continue to rely on you in meeting its objectives."

**6.** Exhibits, 14, 15, 16 and 17 accompanying plaintiff's motion of December 29, 1980.

**7.** Exhibit 19, submitted by motion dated April 20, 1981, paragraphs 3 and 4, read as follows:
"3. You should take particular pride in the confidence that has been evidenced by your selection. I urge you to continue your education and enhance your effectiveness at every opportunity.

**8.** Letter of February 22, 1977, from Orlando Llenza to Colonel Jorge Suro, Jr. SUBJECT—Reconsideration of Non-Selection for Retention.

**9.** Letter of September 12, 1979, from Robert E. Shuck to Col. Suro upon the former's relin-

In explaining the purpose of NGR 20–4 (635–100) defendants note: [10]

"The purpose for extending officers assigned to the Selective Service Section to age 60, instead of completion of their maximum length of service, is to obtain greater use of their services in what is a highly specialized position. As most officers are not assigned to the Selective Service Section until later in their career, and because it can take several years to train officers for these positions, it is more cost-effective to retain individuals assigned to such jobs beyond their normal separation date." (citations omitted)

Defendants, by assigning plaintiff to serve in another position within the PRNG contravene and defeat the very purpose of NGR 20–4 (635–100).

**B**

Plaintiff also argues that defendants' decision to reassign him to the position of G.2 intelligence Office deprived him of his "acquired rights and property interest without due process of law afforded him by the Fifth Amendment". It is plaintiff's position that 10 U.S.C. 3848 and paragraph 6(d) of NGR 20–4 (635–100) together with the interpretation given by the National Guard Bureau to them in the retention letter of March 12, 1970, conferred to him a protected property interest in his position as Chief of the Selective Service Section of the PRNG, which could not be in any way taken away from him without due process of law. Defendants argue as to this issue that plaintiff, as member of the Armed Forces, has no property interest in any particular duty assignment; and, therefore, plaintiff has no property interest in his retention that could be protected under the Due Process Clause of the Constitution, thus, failing to raise a cause of action under the federal question jurisdiction.

 A person has a property interest when he has more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1971). Furthermore, "(t)hese interests, property interests, may take many forms." Ibid, at 576.

The property interest of military officers was recognized by this Court in *Suro v. Padilla*, 441 F.Supp. 14 (D.C.P.R., 1976). It defined the nature of this property interest as follows:

"It is true that the nature of property interest is not identical for military officers as for civil service employees. Nevertheless, to hold that officers have no property interest at all would be inconsistent with the spirit of the Constitution. It would certainly undermine the reasonable expectations of able members of the Armed Forces, with the inevitable concomitant results."

 It is true that military officers serve at the pleasure of the President. They do not have a constitutional or inherent right to be promoted or retained in service, but once the Federal Government and/or state authorities confer to a military officer an expectancy (directly or implied) in his position, it may not constitutionally authorize the deprivation of such an interest without appropriate procedural safeguards. *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980); *Suro v. Padilla, supra.* Plaintiff's transfer from his position in the Selective Service Section will result in depriving him of his acquired rights and property interest, conferred on him by virtue of a federal statute and a federal regulation. We, thus, believe that plaintiff's present status [11] and expectations

---

quishment of his position as Acting Director of the Selective Service System.

**10.** Defendants' memorandum in opposition to plaintiff's motion for preliminary injunction

and in support of defendants' motion to dismiss, pp. 6–7, footnote 7.

**11.** Further considering that on March 10, 1981, the Selective Retention Board considered him

therein constitute protected rights, and as such, cannot be subject of deprivation without due process of law.[12]

### III. Claim not Justiciable nor Reviewable

Plaintiff contends that this Court has the power to review defendants' administrative decision due to the fact that he was transferred from his position, thereby depriving him of his property interest without due process of law. Defendants violated their own valid disposition of 10 U.S.C. 3848, paragraph 6(d), NGR 20–4 (635–100), dated November 30, 1960, the argument goes on. On the other hand, defendants allege that plaintiff's claim is non-justiciable because it involves a substantive intrusion into National Guard duty assignments and non-reviewable since plaintiff's transfer is a discretionary determination of the National Guard.[13]

 This Court is aware that judicial review precludes us from entertaining actions which challenge discretionary decisions made within a valid jurisdictional range. *Orloff v. Willoughby*, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953). Nevertheless, it is this Court's duty to review cases in which a violation of the Constitution, statutes or regulations is alleged. *Mindes v. Seaman*, 453 F.2d 197 (5 Cir., 1977); *Dilley v. Alexander*, 603 F.2d 914 (D.C.Cir., 1979). The military department enjoys no immunity to ignore its own laws and regulations since it is fundamental to our legal system that the government follow and abide by its own regulations. Actions by an agency of the Executive Branch in violation of its own regulations are illegal and void. *Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959). This principle is fully applicable to the PRNG. *Suro v. Padilla, supra.* It has also been held that the federal courts may review matters which are purely internal military affairs to determine if an official has acted outside the scope of his powers. *Harmon v. Brucker*, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958).

 In this case petitioner has not asked this Court to engage in a task for which he has no competence. Suro is seeking, once again, constitutional review of a regulation, a task which traditionally and constitutionally has been committed to such forum. *Dillard v. Brown*, 652 F.2d 316, 321 (3 Cir., 1981). What Suro has done in this case is present a claim and request a relief "of the type which admit(s) of judicial resolution". *Powell v. McCormack*, 395 U.S. 486, at 516–517, 89 S.Ct. 1944, at 1961–1962, 23 L.Ed.2d 491 (1969).

As seen from our discussion above (See II, A, pp. 5–10), PRNG's actions in reassigning Suro is in contravention of its own regulations and recommendations (See note 11). The military justification for such action in this case is nil. The other pan of the scale tips heavily on plaintiff's favor as a result of the infringement of plaintiff's acquired rights and property interest (See II, B, pp. 10–11). Under these circumstances we cannot find Suro's claim to be non-justiciable.[14]

and had recommended his retention in his position in the Selective Service Section.

**12.** Both plaintiff and defendants use the Fifth and Fourteenth Amendments to the issue of the constitutional right of procedural due process in this case. We are not here to determine whether the Fifth Amendment applies to Puerto Rico directly or by operation of the Fourteenth Amendment. However, the Supreme Court of the United States has determined that Puerto Rico is subject to the Due Process Clause of either the Fifth Amendment or the Fourteenth Amendment. *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); *Examining Board v. Flores de Otero*, 426 U.S. 572, 96 S.Ct.

2264, 49 L.Ed.2d 65 (1976); *Torres v. Puerto Rico*, 442 U.S. 465, 99 S.Ct. 2425, 61 L.Ed.2d 1 (1979).

**13.** For the purposes of this Opinion and Order the terms non-justiciable and non-reviewable are not at variance with each other.

**14.** Some courts are at variance on how to proceed in their analytical approach to review military regulations, especially in this area of non-justiciability of claims. The Fifth Circuit Court of Appeals in *Mindes v. Seaman, supra*, first looks for an allegation of deprivation of a Constitutional right or an act by the military which violates a statute or their own regulations and at the exhaustion of available intraservice cor-

### IV. Failure to Exhaust Administrative Remedies

■ It is finally asserted by defendants that plaintiff has failed to exhaust his administrative remedies prescribed by 25 L.P. R.A. 2802, which provides that:

"Any member of the Military Forces of Puerto Rico who believes himself aggrieved by his commanding officer, and who, upon due application to that commanding officer, is refused redress, may complain to any superior commanding officer, who shall forward the complaint to the Governor or Adjutant General."

Plaintiff, on September 16, 1980, sent a letter to defendant Llenza asking him to reconsider his decision of June 23, 1980. On September 19, 1980, he sent another letter to the Governor of Puerto Rico asking him to revoke defendant Llenza's decision since plaintiff's letter to defendant was not answered. Thus, plaintiff has exhausted the administrative remedy available to him within the military sphere under circumstances of his case.

■ Summary judgment lies when there is no genuine issue as to any material fact. Defendants have failed to controvert the facts established in plaintiff's motion for summary judgment by not filing a proper counter affidavit. Thus, when a motion for summary judgment is made and supported as provided in Rule 56 of the Federal Rules of Civil Procedure, and said motion was not properly opposed by the other party, plaintiff has met the burden to show that he is entitled to a judgment as a matter of law. *Hahn v. Sargent*, 523 F.2d 461 (1 Cir., 1975); *Maiorana v. McDonald*, 596 F.2d 1072 (1 Cir., 1979).

The availability of summary judgment in injunction actions is permitted by Rules 1 and 2 of the F.R.Civ.P. Accordingly, these rules, govern and promote the speedy and just completion of litigation in all civil actions whether in cases at law or in *equity* or in admiralty. Thus, the facts of each case decide the question of whether summary judgment should be granted, and not the nature of the action. Wright and Miller, Federal Practice and Procedure, Civil Section 2731, at 602; *Engl v. Aetna Life Ins. Co.*, 139 F.2d 469, 472 (2 Cir., 1943); *California Apparel Creators v. Wieder of California Inc.*, 68 F.Supp. 499, 507 (D.C.N.Y., 1946), cert. denied 332 U.S. 816, 68 S.Ct. 156, 92 L.Ed. 393 (1947); *Holmes v. Government of the Virgin Islands*, 370 F.Supp. 715, 718 (D.C.V.I., 1974).

■ Summary judgment may be used in granting a permanent injunction where there is no genuine issue of facts as in this case. *Auto Drive-Away Co. of Hialeah, Inc. v. ICC*, 360 F.2d 446 (5 Cir., 1966); *Standard Oil Co. of Texas v. Lopeno Gas Co.*, 240 F.2d 504 (5 Cir., 1957); *SEC v. Geyser Minerals Corp.*, 452 F.2d 876 (10 Cir., 1971).

Therefore, since there is no genuine issue as to any material fact, plaintiff as a matter of law is entitled to the issuance of a preliminary and permanent injunction enjoining defendant Orlando Llenza from

---

rectional measures. Once these two elements are present, there are four additional factors which must be weighed before considering review: (1) the nature and strength of the challenges to the military determination; (2) the potential injury to the plaintiff if review is not granted; (3) the type and degree of interference with the military function; and (4) the extent to which the exercise of military expertise or discretion is involved. Accord: *Doe v. Alexander*, 510 F.Supp. 900 (D.Minn., 1981); *Dilley v. Alexander, supra; Schlanger v. U. S.*, 586 F.2d 667 (9 Cir., 1978), reh. and reh. en banc den. 1978; *Turner v. Egan*, 358 F.Supp. 560 (D.Alaska, 1973), aff'd. 414 U.S. 1105, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973).

Other courts have taken the view that the "*Mindes* analysis... intertwines the concept of justiciability with the standards to be applied to the merits of the case". *Dillard v. Brown, supra*, at 323. The Third Circuit Court of Appeals looks for the basic parameters found in *Gilligan v. Morgan*, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973) and *Orloff v. Willoughby, supra*, and if the claims fall within them, the controversy is found to be justiciable.

In *Lindenau v. Alexander*, 663 F.2d 68 (10 Cir., 1981) Chief Judge Seth and Judge Holloway adopt the position of the Fifth Circuit in *Mindes, supra*. Judge McKay, concurring in the judgment, nevertheless views the Third Circuit's approach in *Dillard, supra*, as the correct analysis. Utilizing either of the approaches this Court finds (See III, pp. 12–13) that petitioner's claim is justiciable.

transferring plaintiff from his position as Chief of the Selective Service Section of the Puerto Rico National Guard.

WHEREFORE, in view of the foregoing, defendants' motion to dismiss is hereby DE-NIED, and it is hereby ORDERED that defendant Orlando Llenza, his successors, agents and subordinate officers, are hereby enjoined and restrained from separating plaintiff from his position as Chief of the Selective Service Section of the Puerto Rico National Guard.

IT IS SO ORDERED.