Luis S. NAVAS, Plaintiff,

v.

Luis GONZÁLEZ VALES, et al., Defendants.

Civ. No. 83–1279 (RLA).

United States District Court, D. Puerto Rico.

May 14, 1984.

Manuel A. Quilichini, Lespier, Muñoz Noya & Ramírez, Carlos Del Valle, Lespier, Muñoz Noya & Ramírez, San Juan, P.R., for plaintiff.

Howard Charles, Dept. of Justice, Com. of P.R., San Juan, P.R., Gary H. Montilla, U.S. Dept. of Justice, Office of the U.S. Atty., Hato Rey, P.R., George López Keelan, Río Piedras, P.R., for defendants.

## OPINION AND ORDER

ACOSTA, District Judge.

Plaintiff filed a civil action before this Court on June 1, 1983 requesting declaratory and injunctive relief, mandamus and damages[1] against the named defendants for allegedly being discharged from his position within the Puerto Rico National Guard ("the PRNG") without due process. Simultaneously, plaintiff filed a motion for a temporary restraining order, which was denied on June 9, 1983.

The parties submitted the matter for resolution through joint stipulation of facts and exhibits on June 20, 1983 (Docket No. 14). Thereafter, the parties remaining in this action were Luis González Vales, personally and as representative of the PRNG, the Commonwealth of Puerto Rico (state defendants), and the United States of America (federal defendants). Jurisdiction was invoked pursuant to 28 U.S.C. §§ 1331, 1343, 1361, 2201, 2202 and 42 U.S.C. § 1983.

Presently before us for disposition are the motions to dismiss and/or for summary judgment filed by the parties with their respective memoranda[2] and oppositions thereto.

## UNCONTESTED FACTS

For the past thirty-four (34) years, plaintiff served with the PRNG. The last twenty-six (26) years he has served as a commissioned officer and as a colonel since 1977. Plaintiff's mandatory removal date for length of commissioned service is November 4, 1986.

A Selective Retention Board was convened during March 19–20, 1983 to consider plaintiff for selective retention as provided for in NGR 635–102.[3] Through memorandum dated April 13, 1983, the former Adjutant General, Orlando Llenza, notified plaintiff of the Board's recommendation not to select him for retention and of his approval thereof. Plaintiff was advised he would be separated from the Army National Guard on June 11, 1983. Subsequently, plaintiff requested reconsideration of the recommendation for non-retention. Said request was denied by defendant *González Vales* while pointing out to plaintiff that NGR 635–102 makes no provision for reconsideration by the Adjutant General. Plaintiff did not file an application for relief with the Army Board for Correction of Military Records which could properly entertain such a request pursuant to 10 U.S.C. § 1552 and 32 C.F.R. § 581.3 (1983).

## ISSUES

Plaintiff claims his removal from the PRNG was not in conformity with the applicable regulations. It is further claimed that this violation of regulations deprives him of a property interest in his continued service, in violation of the due process clause of the Constitution of the United

---

1. Plaintiff subsequently dropped the damages claim.

2. Plaintiff's motion requesting summary and declaratory judgment filed on June 29, 1983 (Docket No. 16); federal defendants' motion to dismiss or for summary judgment filed on June 30, 1983 (Docket No. 17); and state defendants' motion to dismiss filed on July 5, 1983 (Docket No. 20).

3. NGR 635–102, Paragraph One (1), provides as follows: "This regulation prescribes procedures for the establishment and conduct of selection boards used in the National Guard Program for selective retention of officers and warrant officers beyond 20 years of qualifying service for retired pay."

States. Plaintiff further contends that, were it not for this unlawful separation, he would be entitled to remain in service with the PRNG until November 1986, his mandatory removal date. Furthermore, plaintiff claims that the regulation is invalid per se because it fails to grant him, or any other similarly situated person, the minimum due process that must be present in an adjudicative decision-making process. Plaintiff notes that NGR 635–102 makes no provision for an effective opportunity to confront the evidence against him nor to provide him with a decision supported by findings of fact.

Defendants basically raise four (4) issues in opposition to plaintiff's motion for summary judgment and in support of their motions to dismiss and for summary judgment: first, defendants claim that the Court lacks subject matter jurisdiction; second, that plaintiff has failed to state a claim for which relief can be granted; third, that plaintiff's claim is non-justiciable and non-reviewable; and last, that plaintiff's claim should be barred for failure to exhaust available administrative remedies.

Plaintiff affirms that his complaint states a cause of action which is justiciable and within the subject matter jurisdiction of the Court. He alleges he has a property interest in continued service which is protected by the due process clause of the Fifth and Fourteenth Amendments to the Constitution. Plaintiff further claims that the PRNG failed to comply with its own regulations rendering its action invalid.

## ARGUMENT

In *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), the Supreme Court stated that the method of rendering dismissals for lack of jurisdiction should be used sparingly.

/W/here the complaint, as here, is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court ... must entertain the suit ... The reason for this is that the Court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief as well as to determine issues of fact arising in the controversy. *Id.* at 681–82, 66 S.Ct. at 775–76.

It has also been affirmed that when allegations of failure to comply with administrative regulations are asserted, the Court is not barred from entertaining such actions. *See United States v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *Suro v. Llenza,* 531 F.Supp. 1094, 1097 (D.C.P.R.1982).

As for the state defendants' argument that the action against the Commonwealth of Puerto Rico cannot be maintained because of the Eleventh Amendment bar, it is without merit. It has been reiterated by our circuit that requests for injunctive relief are not barred by the Eleventh Amendment. *See Urbanizadora Versalles, Inc. v. Rivera Rios,* 701 F.2d 993 (1st Cir.1983); *Citadel Corp. v. Puerto Rico Highway Authority,* 695 F.2d 31 (1st Cir.1982); *Pamel Corp. v. Puerto Rico Highway Authority,* 621 F.2d 33 (1st Cir. 1980). Therefore, we find that jurisdiction in this case could be invoked under 28 U.S.C. § 1331[4] or § 1361.[5]

Having determined that the Court has subject matter jurisdiction, we now turn to the matter of whether the complaint states a claim for which relief may be granted.

Plaintiff claims that his premature separation from the PRNG will strip him of property without due process of law.[6] He avers that a property interest in his position is created and defined by NGR 635–102 and that once the regulations grant a

---

**4.** Section 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

**5.** Section 1361 provides: "The district courts shall have original jurisdiction of any action in

the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

**6.** Plaintiff's due process claims are of a procedural nature.

property interest, it must be accompanied by the rudimentary due process safeguards that attach to a protected interest. Therefore, since NGR 635–102 does not afford plaintiff notice of the case against him nor the opportunity to meet it, the regulation itself is constitutionally invalid.

In this case, the property right plaintiff claims was taken consists of military pay until his mandatory retirement age and his status as officer of the PRNG. In the alternative, he claims defendants did not comply with their own regulations and that the regulation per se is unconstitutional.

■■ Due process is not in and of itself a protected interest. It is a condition which must be complied with whenever the state seeks to divest an individual of any substantive (life, liberty or property) interest. Therefore, before it can be applied, there must be a protected interest at stake. *See Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

■ In *Board of Regents*, the Supreme Court further held that property interests are not created by the Constitution. "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577, 92 S.Ct. at 2709. It is clear then that to have a property interest a person must have more than a unilateral expectation of it, there must be more than an abstract need or desire for it, plaintiff must also have a legitimate claim

of entitlement to it. *Id.* at 577, 92 S.Ct. at 2709.

Plaintiff does not expound on how NGR 635–102 creates and defines a property interest other than stating that it (NGR 635–102) sets the standards regulating the non-retention of an officer. Plaintiff's interpretation of the regulation seems to be that as long as his Officer Efficiency Reports (OERs) show he is a capable officer, he must be retained by the PRNG without any consideration as to other factors set forth in the regulation.[7]

In *Sims v. Fox*, 505 F.2d 857 (5th Cir. 1974) (*en banc*), the court held that no property right exists which entitles a career officer in the United States Air Force to a due process hearing before his separation. "It is well-established law that military officers serve at the pleasure of the President and have no constitutional right to be promoted or retained in service and that the services of an officer may be terminated with or without reason." *Pauls v. Secretary of Air Force*, 457 F.2d 294, 297 (1st Cir.1972) and cases cited therein.

■ The Court finds no evidence on the record indicating plaintiff was at any time led to believe he would be retained until his mandatory retirement age. Contrary to *Suro v. Llenza, supra,* 531 F.Supp. 1094, in this case there is no (bilateral) agreement, nor does the regulation confer any such expectancy directly or implied. On the contrary, having served as a commissioned officer for the last twenty-six (26) years, plaintiff was well aware that his tenure was at all times conditioned by the terms of the National Guard Regulations, one of which was NGR 635–102. *See*

---

7. The program goals show that there are other criteria involved in the retention or non-retention of officers, such as: (a) the individual's capabilities and how they may benefit the National Guard to retain or advance him; (b) the number of years an officer has held a rank and if there is any higher rank which he could be advanced to, or if he has obtained the highest rank possible; (c) whether there are other officers just as qualified or better qualified to occupy a specific rank; (d) the needs of the National Guard in respect to providing the ablest possible officers for the national defense system; (e) the needs of other officers to have the opportunity to come up in the ranks at the peak of their productivity.

The function of the Selective Retention Board is a discretionary one, which means it has the freedom to make decisions and choices according to its judgment. It may not be a matter of plaintiff's not being qualified, but a matter of there being better qualified junior officers who may fill the position. *See generally* NGR 635–102, Appendix B, Annex A.

*Walker v. Alexander,* 569 F.2d 291, 293 (5th Cir.1978).

The goals of selective retention are patently directed toward the maintenance of a strong National Guard and not the protection of individual property rights. The rationale for this is evident. The individual officers who go before the Selective Retention Board already have twenty (20) years in service and will qualify for retirement pay. Any further extension of their time would be solely for the direct benefit of the National Guard as an entity and not for the benefit of the members. Plaintiff knew that the Selective Retention Board had the authority to remove him when they found it pertinent.

Plaintiff has failed to set forth any set of facts which demonstrate that he was deprived of a constitutional right. We find plaintiff had no vested right to serve in the PRNG. Therefore, there being no deprivation of any constitutionally protected rights, there is no basis for a due process claim; plaintiff is only entitled to the process the National Guard provided.

As to plaintiff's claim that the PRNG failed to comply with its own regulations, essentially plaintiff's arguments are premised on the fact that some of his OERs were missing from his records at the time of his evaluation by the Selective Retention Board.[8] Plaintiff states that his records were not prepared in the manner required by the regulations and, therefore, his records before the Selective Retention Board were prejudicially defective so that he was not considered in a fair and equitable manner. However, plaintiff has not pointed out why the absence of the OERs was a material legal error and how this error could possibly lead to his non-retention. No allegations have been made that the missing OERs reflect a sudden change of plaintiff's capabilities. As a matter of fact, the Selective Retention Board of 1982 had recommended plaintiff be retained on the same record which the Board had before it in 1983. The Selective Retention Board of 1983 was made up of plaintiff's fellow officers who were well aware of his capabilities. Plaintiff claims that the adverse determination by the 1983 Board suggests the presence of improper considerations in its evaluation process.

In essence, plaintiff's claims constitute a frontal attack on the judgment of the members of the Selective Retention Board and the Adjutant General in the exercise of their discretion as to internal military matters involving personnel judgments. Plaintiff seeks to have this Court encroach upon the business of running the Army by reviewing a specific military personnel action; the question of which officers should be retained by the National Guard. This is precisely the type of situation, *inter alia,* that the Supreme Court of the United States prohibits in *Chappell v. Wallace,* 462 U.S. 2362, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). "/I/t is difficult to conceive of an area of government activity in which the courts have less competence. The complex, ... professional decisions ... and control of a military force are essentially professional military judgments, subject always to civilian control of the Legislative and Executive Branches." *Id.* at 2366.

It is defendant's contention that this Court should deny review of plaintiff's claim on the grounds that they are non-justiciable and non-reviewable.

In *Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–540, 97 L.Ed. 842 (1953), the Supreme Court expressed its objections to judges "running the Army":

/J/udges are not given the task of running the Army. The responsibility for setting up channels through which ... grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government

---

8. OERs for the years 1980–1981 and 1981–1982. Plaintiff submitted what he proffered to be an OER for the period of 1982–1983. We have decided not to take it into consideration, since it is in no way pertinent for purposes of the resolution of this matter.

requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.

■ This was reaffirmed in *Chappell v. Wallace, supra,* 462 U.S. at ——, 103 S.Ct. at 2366. The implicit suggestion is that judicial review encroaches upon functions that are best left to the military or that the courts lack the mastery to deal with the special factors which entail a military decision. The Constitution of the United States, under Article I, Section 8, dictates that the regulation of the militia is within the express power of Congress rather than the courts.[9] Therefore, the Court must exercise caution and self-restraint when entertaining claims of this nature. *Chappell v. Wallace, supra,* 462 U.S. at ——, 103 S.Ct. at 2365. The case of *Mindes v. Seaman,* 453 F.2d 197 (5th Cir.1971), while noting this reluctance of the courts to interfere in military matters, nevertheless suggests a two-pronged test to determine whether a claim is suitable for judicial review. First, the plaintiff challenging a military decision must allege a violation of the Constitution, a statute or military regulation, and he must also demonstrate that he has exhausted the available intraservice remedies. If the first step is satisfied, then the Court must weigh four factors: (a) the nature and strength of the plaintiff's claim, (b) the potential injury to the plaintiff if review is refused, (c) the type and degree of interference with the military function, and (d) the extent to which military expertise or discretion is exercised.

■ In this case, plaintiff has alleged a violation of the Constitution and of a military regulation. However, we find that plaintiff has not exhausted all the available intraservice remedies. Plaintiff may appeal defendant's decision before the Army Board for Correction of Military Records. The Army Board for Correction of Military Records has the power to reinstate plaintiff and provide him with back pay if it should deem he has such a right.[10] *See Chappell v. Wallace, supra,* 103 S.Ct. at 2367 and cases cited therein. *See also Diliberti v. Brown,* 583 F.2d 950, 951–952, n. 2 (7th Cir.1978). Since the first step of the

9. The Constitution of the United States in its Article I, Section 8, provides that:

The Congress shall have Power to ... provide for the common Defense and general Welfare of the United States: ... To raise and support Armies ... To provide for calling forth the Militia, to execute the Laws of the Union, suppress Insurrections and repel Invasions; To provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the states respectively, the Appointment of Officers, and the Authority of training the Militia according to the discipline prescribed by Congress; To make all laws which shall be necessary and proper for carrying into Execution the foregoing Powers and all other Powers vested by this Constitution ...

10. John W. Matthews, Secretary of the Army Board for Correction of Military Records, in his declaration filed on June 2, 1983 (Docket No. 4), Paragraphs 2, 3 and 4, attests:

2. The Secretary of a military department, acting upon the recommendation of a Correction Board, has the power under 10 U.S.C. section 1552 to correct a military record and order payment for losses incurred because of the incorrect record.

3. In the above-captioned case, if it is determined that the plaintiff's nonretention in the National Guard was the consequence of a manifest error or injustice in his records, the ABCMR, acting through the Secretary of the Army, can reinstate the plaintiff in an active federal Reserve status and order the payment of all pay and allowances lost as a consequence of his separation from that status. The remedy ultimately fashioned in this case will be dependent upon the particular circumstances of the case; however, the plaintiff will not be arbitrarily or capriciously denied the relief warranted by the facts of his case. Indeed, that is the judicially recognized standard in reviewing our recommendation and the Secretarial designee's action.

4. Over 65% of those who make application to the ABCMR ultimately receive some sort of relief. In calendar year 1982, the ABCMR received in excess of 32,000 applications. In the over 12,000 applications presented to the ABCMR, processing time averaged below 150 days. The remaining cases were handled through administrative channels or are awaiting action now.

*Mindes* test is not satisfied, plaintiff has failed to present a reviewable claim. .

Even if plaintiff had satisfied the first part of the *Mindes* test, his claim would still be non-justiciable and non-reviewable under the second part. As we have already stated, plaintiff has not presented a meritorious claim of constitutional or regulatory violation. Second, since plaintiff already has more than twenty (20) years of service in the Armed Forces and is so close to the mandatory retirement age, the potential harm he would suffer is minimal, especially when balanced against the interests of the national defense represented by the PRNG. With regard to the last two aspects of the test, we find that the role assigned to the judiciary precludes it from interfering with areas which have been committed to other branches of government. *Flast v. Cohen,* 392 U.S. 83, 94–95, 88 S.Ct. 1942, 1949–1950, 20 L.Ed.2d 947 (1968). Therefore, in deference to the experienced decisions of the military professionals, we believe this Court should abstain from interfering on internal issues, such as the retention of personnel.

CONCLUSION

In view of the foregoing, this Court finds that plaintiff has not only failed to state a claim for which relief may be granted, but also that the issues presented herein are non-justiciable and non-reviewable.

Therefore, considering the fact that plaintiff has military administrative remedies which he may pursue, this Court hereby denies plaintiff's motion for summary judgment filed on June 29, 1983 (Docket No. 16), and it is hereby ORDERED that federal defendant's motion to dismiss or for summary judgment filed on June 30, 1983 (Docket No. 17) and state defendant's motion to dismiss filed on July 5, 1983 (Docket No. 20) are granted.

This case is hereby dismissed. The Clerk of the Court shall enter judgment accordingly.

IT IS SO ORDERED.